## Town of CORINTH *v.* Town of NEWBURY.

Settlement is gained by residence within the *jurisdictional limits* of a town, although without the charter boundaries.

THIS was an appeal from an order of removal of Joseph Harriman, a pauper, from the town of Corinth to the town of Newbury. Plea, that the pauper was unduly removed, and trial by jury. On the trial in the county court the

plaintiffs gave evidence tending to prove that before the
year 1781, Newbury had allotted the town to a certain
range west, but claimed to hold about one and a half miles
further west; that, in 1786, by the survey of Whitelaw, the
west line of Newbury was about half a mile west of said
range of lots. Afterwards Topsham was surveyed to that
line; still, Newbury claimed and exercised jurisdiction over
the whole tract for one and a half miles west of the range
allotted in 1781, and the inhabitants thereon paid taxes, and
did militia duty in Newbury.

In 1790, Topsham was organised and *claimed* jurisdiction to the Whitelaw line. In 1802, an act of the legislature settled said Whitelaw line as the jurisdictional line
between the towns. Said Harriman, in 1781, resided on
the land west of said lots in Newbury, and between them
and the said Whitelaw line, and continued to reside there
for several years. Between 1785 and 1787, he removed on
to a lot in the west range of lots so allotted in Newbury,
and there resided from four to six years, until about 1791,
when he removed on to the mile tract, or strip west of the
Whitelaw line, claimed by Newbury and Topsham, and
resided there about two years, and then removed to Corinth,
and resided there about ten months, and then removed from
the state. There was no proof in relation to his property.

The defendants offered evidence tending to prove that Asa
Porter, who owned a large part of Topsham, claimed that
Topsham extended east as far as said lots in Newbury.
This was objected to by plaintiffs and rejected by the court.
They also offered testimony to prove that, in fact, the
charter limits of Newbury extended no farther west than
said lots, so allotted in Newbury. This was objected to and
rejected by the court.

The counsel for the plaintiffs then insisted, that, upon
the testimony, the court should charge the jury that said Harriman was unduly removed. But the court instructed the
jury, that if they believed the testimony introduced by the
plaintiffs, they should return a verdict that said Harriman
was duly removed; whereupon the jury returned a verdict
that he was duly removed, and the defendants excepted to
the decisions and charge of the county court.

Orange,
March,
1841.

Corinth
v.
Newbury.

*L. B. Peck* and *A. Underwood* for defendants.

1. If any settlement was gained by the pauper in Newbury, it was acquired under the act of 1779. State Papers, p. 379. This act expired at the close of the session of the legislature in October of the same year. State Papers, p. 388. It was, however, continued in force by acts passed from time to time until October, 1783. State Papers, p. 391, 397, 421, 444, 467. By an act passed in October, 1783, (State Papers, p. 482,) it is declared " that each and every law and statute of this state, except those statutes which have been repealed by special act of assembly, or are expired by their own limitation, shall be and remain in full force and virtue until the rising of the general assembly in October next." Acts of the same tenor were passed in October, 1784, 1785, and 1786. State Papers, p. 496, 504, 510.

We submit that the act of 1779 expired in October, 1783, and was not revived by the acts of 1783. However this may be, the law was repealed and ceased to operate after December, 1787, by force of the act of 1787, and a new mode of obtaining a settlement was then prescribed. Laws of February and October session, 1787, p. 130 and 15. The mode of obtaining a settlement, prescribed by the act of February, 1787, remained in force until 1797, when it was repealed. The case, then, stands upon the act of 1779. The town of Corinth cannot, as we insist, avail themselves of any settlement, obtained under that act, as it was repealed by the act of 1787, which saves no rights acquired under it.

It has been repeatedly held, by this court, that the settlement of paupers is entirely a creature of the statute. It is an arbitrary regulation ; a liability imposed by statute, and it would seem, in analogy to other cases, that when the statute is repealed which imposes the liability, the liability as well as the statute is gone. *Ware* v. *Hylton et al.* 3 Dall. 235. *Royalton* v. *Fox et al.* 5 Vt. R. 458.

2. The pauper acquired no settlement under the act of 1779, prior to his removal from the half mile strip, unless that tract was within the chartered limits of Newbury.

The latter town should have been permitted to go into evidence on this point. That Newbury claimed jurisdiction over this tract and individuals residing thereon paid taxes to

the town, does not fix the settlement there, nor, as we believe, does the Whitelaw survey and the act of 1802 determine the case. It would be unjust to give this operation to the act of 1802. *Freeman* v. *Kenney et al.* 15 Pick. 44.

3. If, however, the Whitelaw line is to govern, then we insist that the pauper acquired a settlement in Topsham under the act of 1797. Sec. 1. old Stat. p. 383.

*Wm. Upham* and *L. B. Vilas* for plaintiffs.

From 1779 to 1787, all that was required to gain a legal settlement in any town, so as to charge such town with the support of a pauper, was one year's residence. Vt. State Papers, p. 379, and onward.

It appears, from the bill of exceptions, that the pauper in question resided in Newbury, as now constituted, in 1781, and for several years thereafter; so that there can be no question but he had once a legal settlement in Newbury, and, if he has never gained a settlement in any other town in the state, he still belongs to Newbury.

In 1787, the poor law was so altered that no person could gain a settlement in any town, unless he was born therein, or had owned or should own estate in such town of the value of £200, clear of all demands against him, or of the yearly value of ten pounds.

Harriman resided in the town of Newbury until 1791, and after that time it cannot be seriously contended that he gained a settlement under the laws of 1787, as it does not appear that he was ever possessed of any property.

The evidence offered by Newbury, it is contended, was properly rejected. Jurisdiction in fact is all that is required. It is wholly immaterial about the chartered limits.

Newbury exercised exclusive jurisdiction over the tract of land on which Harriman resided, and the inhabitants paid their taxes and did militia duty in Newbury, and this was before the organization of Topsham ; and even when Topsham was surveyed, she did not claim the land on which Harriman resided in 1781.

Again, the repeal of the act of 1779, did not deprive Harriman of his settlement gained under it. 14 Mass. R. 322.

ORANGE,
March,
1841.

Corinth
v.
Newbury.

ORANGE,
March,
1841.

Corinth
v.
Newbury.

The opinion of the court was delivered by

COLLAMER J.—The title to land, in our townships, is derived entirely from the *charters*, which must determine the geographical limits for that purpose; and they cannot be extended or contracted, even by legislation. But the existence and extent of a town as a municipal corporation, with all its civil privileges and duties, depend, not on the charter, but on laws, subject to constant changes, and its geographical limits liable to alteration. To the same limits that its jurisdiction extends to exact of the citizens taxes, duties and allegiance, do also extend the corresponding municipal obligations to sustain schools, roads, and paupers. Such rights and duties are correlative and inseparable.

Newbury, from the first settlement, held and exercised municipal jurisdiction one mile west of where the Whitelaw line was afterwards established. In 1802, an act of the legislature restrained them from going west of that line; but, at no time, has their jurisdiction been interrupted or questioned east of that line. Joseph Harriman, before the statute of 1787, resided in Newbury, east of the Whitelaw line, more than one year. He was within those limits and among those of whom that town exacted the *duties* of townsmen and to whom the town should therefore perform the *obligation* of support. The town cannot be permitted now to cast off this obligation, by showing their own wrong in first extending their municipal jurisdiction beyond the charter boundaries.

Judgment affirmed.