TOWN OF LANDGROVE *v.* TOWN OF PERU, Appellants.

If a pauper have resided for more than seven years upon one of a tier of lots lying between two towns, and over which each town has claimed and

Landgrove *v.* Peru.

exercised jurisdiction,—no *jurisdictional* line having ever been established or acquiesced in between them,—his settlement will be deemed to be in that town, within the *charter limits* of which the tier of lots actually lies.

An act of the legislature, assigning the tier of lots to one or the other of the two towns, passed after the pauper has completed the residence necessary to gain for him a settlement, can have no effect in determining in which of the towns his settlement is.

APPEAL from an order of removal of Nathan Richardson and his wife from Landgrove to Peru. Plea, that the paupers were unduly removed, and trial by jury.

It appeared in evidence that the pauper, from 1818 to 1833, resided on a lot of land which was claimed by both Landgrove and Peru to be within their respective charter limits, and that he had gained no legal settlement since 1833. From a plan of the town of Peru, it appeared that the proprietors of that town had allotted and claimed the land as far east as the "Munn line," which was run in 1770, and which was claimed to be the ancient and established line between said towns. It further appeared in evidence that the first and second tier of lots west of the Munn line were claimed, and jurisdiction over the different lots in the same was exercised, by both Peru and Landgrove; and that part of the inhabitants residing upon those lots paid taxes and voted in Peru, and part in Landgrove; and that the pauper resided on a lot in the second tier, and had voted and paid taxes in Landgrove, and also had paid three several taxes in Peru, and no others had ever been claimed of him prior to 1833, and that he voted in Peru in the year 1839, when he was again residing on the same lot.

It also appeared, that, by an act of the legislature, passed October, 1835, the jurisdictional line between the two towns was fixed on the west line of the first tier of lots west of the Munn line, and that the pauper resided on the second tier of lots, which was by that act assigned to Peru, at the time he acquired his last legal settlement.

The court charged the jury, that it was immaterial whether the Munn line was the true line between the two towns, or whether the land was within the charter limits of Peru, and that the only question for them to decide was, whether Landgrove had exercised and maintained exclusive jurisdiction over the lot on which the pauper

Landgrove *v.* Peru.

resided, except as before stated. Verdict for appellants. Exceptions by plaintiff.

*J. S. Robinson* for plaintiff.

1.  The charge of the court to the jury is exceptionable, since it places the question of the pauper's settlement upon the fact whether Landgrove had exercised jurisdiction over the land on which the pauper resided; when, from the evidence, the jury would have been warranted in finding that Peru had exercised and claimed jurisdiction over the same lot. The proof of the exercise of jurisdiction by both towns distinguishes this case from that of *Corinth* v. *Newbury*, 13 Vt. 496; as there the jurisdiction was uninterrupted and exclusive in one town.

2.  As neither town had exercised exclusive jurisdiction, it should have been left to the jury to find from the evidence whether the land, on which the pauper resided, was within the charter limits of Landgrove, or Peru; and for this purpose it become material for the jury to ascertain whether the "Munn line" was the actual and established jurisdictional line between the towns.

3.  By the statute of 1835, [Acts of 1835, p. 29,] the jurisdictional line between the towns was established by dividing the territory in dispute; and, in the division, the lot upon which the pauper resided, and acquired a settlement, fell to the town of Peru. By the Revised Statutes [c. 16, § 1,] the liability to support the pauper devolved upon Peru, in consequence of the annexation to that town of the lot on which the pauper acquired his settlement.

*A. L. Miner* for appellants.

The obligation of towns to support paupers does not depend upon their *chartered,* but upon their *jurisdictional,* limits, as claimed and exercised by the town; they must support all, of whom they have claimed allegiance, and over whom they have exercised jurisdiction. There is nothing to take this case out of the decision in *Corinth* v. *Newbury*, 13 Vt. 496.

The opinion of the court was delivered by

WILLIAMS, Ch. J.   The defendant town relied upon having shown a settlement of the pauper in Landgrove, by a residence there

for over seven years.   It appears that he resided on a lot of land claimed by each party to be in their several and respective towns. If a jurisdictional line had been settled between the two towns, undoubtedly the pauper would have acquired a settlement in the town, in which, according to the jurisdictional line, he resided.   It is also true, that, if there is no such jurisdictional line, or if it is disputed, and both towns have occasionally exercised and claimed jurisdiction, resort must be had to other testimony to establish the true line, and the question in relation to residence and settlement cannot depend either on the voluntary act of the person in voting, or of the town in exacting taxes of the person.

In the case of *Corinth* v. *Newbury,* 13 Vt. 496, the pauper had resided within the undisputed jurisdictional limits of Newbury, and within which the town of Corinth had never exercised any jurisdiction at all.   In the case before us the pauper resided on a lot claimed by both Landgrove and Peru.   The lot on which he lived was in the second tier west of what was termed the Munn line, and the town of Peru had exercised and claimed jurisdiction east of his lot, and to the Munn line ; part of the inhabitants residing on those two tiers of lots had paid taxes and voted in Peru, and part in Landgrove ; and, with respect to the pauper himself, he had voted and paid taxes in Landgrove, and three several land taxes had been claimed of him in Peru, and had been paid by him.   Under these circumstances we cannot say that it was immaterial whether the Munn line was the true line, or not, or whether the land was within the chartered limits of Peru, or not.   No jurisdictional line had been agreed on, settled, or acquiesced in ; and, although over this particular lot the town of Landgrove had exercised and maintained exclusive jurisdiction, yet the town of Peru had also exercised and maintained jurisdiction in claiming of him, and in his paying taxes, as before stated ; and the town of Peru had also exercised and maintained jurisdiction over other lots in the same tier, and to the Munn line.

It appears to us, therefore, that the court erred in directing the jury that it was immaterial whether the Munn line was the true line or not.   If there was no established jurisdictional line, different from the line of the town, it became and was material to establish the true line, and that would be the jurisdictional line.

54

The other part of the case, in relation to the act of the legislature in 1835, can have no effect, as the settlement of the pauper, if in Landgrove, was complete before the passing that act.

The judgment of the county court is reversed.