THE TOWN OF READING v. THE TOWN OF WEATHERSFIELD.

*Pauper. Evidence.*

If a town exercise actual and exclusive jurisdiction over land, the residents thereon will gain a settlement in that town, notwithstanding the land is not within its chartered limits, and evidence that the town has for more than seven years levied and collected taxes of a resident upon such land, caused his children to be returned as belonging to one of its school districts, and allowed him to vote at its town meetings, is competent to show that such jurisdiction has been exercised as will give him a settlement in that town; and upon such evidence, if there is no rebutting testimony, the court will be justified in instructing the jury that the person, who had been thus treated by the town, had a legal settlement therein.

This was an appeal from an order of removal of one Mary Thomas, a pauper, with her three children, from the town of Reading to the town of Weathersfield, made by two justices in 1851.

Plea, that the pauper was unduly removed, because her last legal settlement was not in Weathersfield, and trial by jury, at the May Term, 1857,—UNDERWOOD, J., presiding.

It appeared that the pauper was the widow of one Anson F. Thomas, who was born April 15, 1806 and died in 1850. Anson F. Thomas was the son of one John Thomas, and the pauper's last legal settlement being that of Anson, and that of Anson being, by derivation, that of his father, John Thomas, the question for the jury was, where was the last legal settlement of John Thomas, at the time Anson became of age, (April 15, 1827.) It appeared that John Thomas resided, indisputably, in Cavendish from 1803 until 1813, without being warned out of that town; that in the year 1813 he built a house on the "Gilbert place," so called, very near to the division line between Cavendish and Weathersfield, the latter town lying east of that line and the former west of it, and that he lived in that house until some time in the year 1822, and supported himself and family, and then moved to the "West house," so called, conceded to be in Weathersfield.

The plaintiff's evidence tended to show that the house on the "Gilbert place," was east of the charter line between said towns and in Weathersfield, and the defendants' evidence tended to show that it was west of that line and in Cavendish.

It appeared that the town line was attempted to be run on two

occasions, somewhere from 1821 or 1822 to 1830, by contending land owners, and that one of the lines ran east of the house on the " Gilbert place," at a bridge, and the other west of it, at a large rock, the rock and bridge being some six rods apart; that an old turnpike, running east and west by this house, was, about the year 1830, thrown on the towns of Cavendish and Weathersfield for repairs. The plaintiff's testimony tended to show that the two towns commenced the repairs of the road at the rock; that on the occasion of commencing these repairs the selectmen of Weathersfield and Cavendish were together, and that the selectmen of Weathersfield pointed out the rock as the point from which repairs were to be made. The defendant's testimony tended to show that on that occasion the selectmen of Cavendish regarded the bridge as the point, but that as they paid for repairs by the rod, they yielded to the rock as the point, as they would thus have fewer rods to pay for. The plaintiff's evidence tended to show that as late as 1839 or 1840, Weathersfield commenced repairs at the rock.

There was no evidence that the towns of Cavendish or Weathersfield, or their officers had their attention called to the matter of the town line while John Thomas resided on the " Gilbert place," nor until the road repairs were made about 1830.

The defendant's testimony tended to show that the portion of the road between the rock and bridge was of such a character that it never required repairs, and that the towns commenced repairs at the bridge as a mark of division. The defendant gave testimony also tending to show that a hemlock tree, standing on the bank of Black River, about one mile and a half south of the house on the " Gilbert place," had always been regarded as in the charter line between the towns, and that roads in the respective towns were constructed and repaired accordingly, and that a straight line from the tree to the north east corner of Cavendish and the north west corner of Weathersfield, a conceded true corner, passed over this bridge and east of the house, and that the charter line was a straight line. The plaintiff's testimony tended to show that the line of occupancy of some of the inhabitants of Cavendish and Weathersfield, north of the " Gilbert place," was over the rock and west of the house, and also that the hemlock tree was east of the true charter line.

The defendant also gave evidence tending to show that from 1803

up to 1822, (when John Thomas moved to the " West house,") he, John Thomas, was listed and taxed, and paid taxes in Cavendish, attended town meetings and voted there, that his children were returned as belonging to a school district in Cavendish, and that no question was raised by either of the towns, as to the house on the " Gilbert place," being within the jurisdiction of Cavendish.

The plaintiff claimed and requested the court to charge the jury that, if they found that his house was within the chartered limits of Weathersfield, then John Thomas' last legal settlement, before Anson become twenty-one years of age, was in Weathersfield, and that the plaintiff was entitled to recover. But the court refused so to charge, but told the jury that though they should find that this house was east of the chartered limits of Cavendish, yet if they found that John Thomas, from 1803 to 1822, paid taxes in Cavendish, sent children to school there, attended town meetings and voted there, and was treated by Cavendish as a citizen of that town, and treated himself as such, and no question was raised about it by Weathersfield, his last legal settlement was in Cavendish, and that the defendant was entitled to recover. The jury returned a verdict for the defendant. To the refusal of the court to charge as requested, and the charge as given, the plaintiff excepted.

*Converse & French,* for the plaintiffs.

*Washburn & Marsh,* for the defendants.

The opinion of the court was delivered by

Aldis, J.   The plaintiff requested the court to charge the jury that if the house was within the chartered limits of Weathersfield, then John Thomas' last settlement was in Weathersfield, and the plaintiff was entitled to recover.

The court refused so to charge, but told the jury that though such house was within the chartered limits of Weathersfield, yet if they found that " said John, from 1803 to 1822 paid taxes in Cavendish, sent children to school there, attended town meetings and voted there, and was treated by Cavendish as a citizen of that town, and treated himself as such, and no question was raised about it by Weathersfield," then his settlement would be in Cavendish and the defendant was entitled to recover.

Town of Reading *v.* Town of Weathersfield.

I. The first point raised in this court is, that the county court erred in refusing to charge as requested.

It was settled in *Corinth* v. *Newbury,* in the 13th Vt., that a settlement could be acquired in a town by residence upon territory within its actual and exclusive jurisdiction, though without its chartered limits. The reasons for the decision were very clearly and concisely stated in the opinion of Judge Collamer and need not be repeated. In *Landgrove* v. *Peru,* 16 Vt. 422, the principle of *Corinth* v. *Newbury* is reaffirmed, with this limitation : that if *both* towns have exercised jurisdiction over the territory, so that in fact no jurisdictional line has existed, then the settlement must be determined by the true boundary lines and " cannot depend on the voluntary act of the person in voting or the town in exacting taxes of the person." These decisions must be held to have settled the question in this state. We may remark, however, that the same principle is recognized in *Northwood* v. *Somerset,* 2 N. H. 242, where it was further held that a settlement so acquired, is not affected by the subsequent acquisition of jurisdiction by the town rightfully entitled to it. The case of *Somerset* v. *Rehoboth,* 6 Cushing 320, applies the same principle to a settlement gained upon territory within the actual jurisdiction of Massachusetts but belonging of right, and subsequently relinquished to Rhode Island. If, therefore the defendant's evidence tended to show that the town of Cavendish exercised exclusive jurisdiction over the place where the settlement was to be acquired, the refusal to charge as requested was right.

The plaintiff claims, that the evidence for the defendant, recapitulated in the charge of the court, viz : to show that Thomas was listed and taxed, paid taxes in Cavendish, attended town-meetings there and voted, etc., etc., were voluntary acts of Thomas and did not tend to show that Cavendish claimed and exercised jurisdiction over the place where Thomas lived ; and an expression of Chief Justice Williams, in his opinion in *Landgrove* v. *Peru,* is relied upon to sustain this view. His language is, " if both towns have exercised and claimed jurisdiction over the land in dispute, resort must be had to other testimony to establish the true line ; and the question in relation to settlement can not depend on the voluntary act of the person in voting, or the town in exacting taxes of the person.

It is obvious that Chief Justice Williams did not mean by this

language, that such acts did not *tend* to show that the town thereby claimed and exercised jurisdiction ; but only that such claims and acts of jurisdiction were not *conclusive*, where they had been exercised by *both* towns, and that, as the acts of the one town were in the law, of equal weight with the acts of the other, and so each nullified the other, the question, (to use his words) *"did not depend"* upon the point of actual and *exclusive* jurisdiction, but upon the point of where the true boundary line was.

The levying and collecting of taxes by a town is clearly the claim and exercise of jurisdiction. So is the return of children as belonging to a school district, which implies that they reside in the district and are so entitled to a share of the public money. The allowance of a person to vote in *town* meetings and thus to share in the power of deciding upon all questions affecting the rights, the duties and the interests of the town, is an unquestionable recognition of the residence of such person within the limits of the town. Similar evidence was received for this purpose in *Corinth* v. *Newbury* and in *Landgrove* v. *Peru.* We find no error in the refusal to charge as requested.

II. It is further claimed by the plaintiff that the evidence tended to show and did show that *both* towns claimed and exercised jurisdiction over the land upon which Thomas lived, and therefore this case falls within the principle of *Landgrove* v. *Peru*, and resort must be had to the *true* boundary line to decide the question of residence and settlement. The evidence relied on for this purpose is that "the line of occupancy of some of the inhabitants of Cavendish and Weathersfield, north of said Gilbert place, was according to the line as claimed by Cavendish." There was no evidence to show that Weathersfield had ever, from 1813 to 1822, claimed or exercised any jurisdiction whatever over the land where Thomas lived. It is urged that the line of occupancy to the north, if extended in a straight direction would set off the land, where the pauper lived, to Weathersfield. Now, if it was necessary in law, that a jurisdictional line should be a straight line, this argument would be tenable. But it is with a jurisdictional line as with the original boundary lines of towns as run and marked by surveyors. These are established as actually run out and marked upon the land, whether they do or do not correspond with the boundaries mentioned in the charter. So jurisdictional lines must conform to

the actual limits of jurisdiction as exercised upon the land and may be straight or crooked to correspond with the bounds of the jurisdiction *de facto*.

III. The plaintiff also insists that the charge of the court misled the jury; that they must have understood from it that if they found the facts proved as mentioned in the charge, Thomas had acquired, by his paying taxes, etc., a *personal* right to a settlement in and a support from Cavendish, and that his settlement did not depend upon his residence within the jurisdictional limits of the town.

The language of the charge directs the attention of the jury to the facts tending to prove the issue on behalf of the defendant, and tells them that, if the facts are found, the defendants should recover; but omits to instruct them as to what the precise issue is that must be found to entitle the defendants to recover. It seems to take it for granted that the jury understood that. In construing the language of the charge we should consider it in connection with the whole case, and with the request of the plaintiffs, which the court refused to comply with.

The facts proved by the defendants showed not only acts done by John Thomas, from which it is contended the jury might have erroneously supposed he gained a personal right to a support, but also acts of jurisdiction done by Cavendish and recognition and acquiescence in such acts by Weathersfield. The acts of the town point directly and solely to the question of jurisdiction as controlling the settlement. They must have been understood as being pertinent only to prove the extent and exercise of jurisdiction. This evidence as to the doings of the two towns is particularly specified and alluded to by the court. The positive exercise and claim of authority by Cavendish is contrasted with the omission to act and the acquiescence of Weathersfield.

It is also to be considered, that, if the jury found the facts upon which the court told them the defendants were entitled to recover, inasmuch as there was no evidence to rebut them, the conclusion from them would follow almost as a necessary consequence.

Although the language of the court, as stated in the exceptions, seems wanting in fullness and precision, we can not reasonably conclude that the jury were misled by it.

The judgment of the county court is affirmed.