NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 36

No. 2020-076

In re Snowstone LLC Stormwater Discharge Authorization (Michael Harrington et al., Appellants)

Supreme Court

On Appeal from
Superior Court,
Environmental Division

September Term, 2020

Thomas S. Durkin, J.

Merrill E. Bent of Woolmington, Campbell, Bent & Stasny, P.C., Manchester Center, for
  Appellants.

Lawrence G. Slason and Samantha L. Snow of Law Office of Salmon & Nostrand,
  Bellows Falls, and David R. Cooper of Facey Goss & McPhee P.C., Rutland, for Appellees.

PRESENT: Robinson, Eaton, Carroll and Cohen, JJ., and Morris, Supr. J. (Ret.),
         Specially Assigned

¶ 1. **ROBINSON, J.** Neighbors appeal three Environmental Division rulings related to their appeal of the Agency of Natural Resources' (ANR) decision to authorize Snowstone, LLC, to discharge stormwater at a proposed project site pursuant to a multi-sector general permit (MSGP). First, the court dismissed for lack of statutory standing most of neighbors' questions on appeal and dismissed the remaining questions as not properly before the court. Second, the court concluded that neighbors' motion for a limited site visit was moot, given its dismissal of neighbors' appeal. Finally, the court granted Justin and Maureen Savage's (landowners) motion to intervene in the proceedings. We conclude that neighbors have standing to appeal the ANR's authorization to act under a MSGP and that their motion for a limited site visit is not moot. We further conclude

that the court acted within its discretion to allow landowners to intervene. Accordingly, we reverse the dismissal of neighbors' appeal and the dismissal of the motion for a site visit, and we affirm the court's decision to grant landowners intervention.

¶ 2. This appeal arises from Snowstone's proposed dimensional stone extraction project at a quarry off Tierney Road in Cavendish, Vermont. Snowstone sought to acquire a 0.93-acre portion of landowners' 176-acre tract of land to carry out the project. Specifically, Snowstone planned to acquire a 0.64-acre parcel where the stone quarry was located and where extraction would take place, along with a 0.29-acre easement over an existing "woods road" running from the quarry to a shared portion of landowners' driveway. Cavendish is a "one-acre town" for purposes of determining Act 250 jurisdiction, meaning that any commercial or industrial development on more than one acre of land requires an Act 250 state land use permit pursuant to 10 V.S.A. § 6001(3)(A)(ii).

¶ 3. Snowstone filed a request for a Jurisdictional Opinion (JO) pursuant to 10 V.S.A. § 6007(c) to determine whether its proposed project would be subject to Act 250 jurisdiction. Neighbors, who were all neighboring or adjoining landowners and residents of Tierney Road, offered public comment in the proceedings. The district coordinator acknowledged neighbors as interested parties with a "particularized interest" in the outcome of the JO.

¶ 4. In October 2017, the district coordinator determined that in light of the terms of the agreement between landowners and Snowstone, the entire 176-acre tract should be considered to be owned or controlled by a single person for purposes of determining Act 250 jurisdiction, rather than only the 0.93-acre portion that Snowstone contracted to acquire from landowners. Snowstone appealed that determination to the Environmental Division of the Superior Court. Neighbors timely intervened in the appeal. In addition to supporting the district coordinator's conclusion that the project tract comprises the entire 176 acres, neighbors argued that the project would require one or more stormwater discharge permits, which would include conditions making it physically

impossible to locate and operate the project within the 0.93-acre parcel and thus would likely be subject to Act 250 jurisdiction.

¶ 5. In May 2018, following discovery and some settlement discussions, the Environmental Division conducted a de novo merits hearing focused on two principal legal issues: (1) whether the landowners-to-Snowstone purchase and sale agreement was an "arm's-length transaction" such that the land subject to Act 250 jurisdiction was limited to the parcel and easement that Snowstone planned to purchase,[1] and (2) whether the evidence presented supported Snowstone's assertion that its activities could be contained within the 0.93-acre parcel that it intended to acquire from landowners. After Snowstone presented its case-in-chief, at Snowstone's urging and with neighbors' consent, the court issued an order bifurcating the two issues with the expectation that it would render a decision on the first, while Snowstone sought any necessary stormwater and discharge permits.

¶ 6. The court issued an interim order providing a timeline for Snowstone to submit to ANR or its subdivisions applications for any necessary stormwater and discharge permits. The interim order also required Snowstone to include neighbors on an "Interested Persons List" and provided that "Snowstone w[ould] not contest Neighbors' standing in permitting proceedings concerning the proposed quarry or Neighbors' status as 'persons aggrieved' for purposes of standing to intervene in the permitting process or to appeal."

¶ 7. Snowstone submitted an application to the Department of Environmental Conservation, a department within ANR, for authority to act under an MSGP. The application outlined Snowstone's proposed stormwater pollution prevention plan (SWPPP), as well as the best management practices it planned to follow throughout the project operations. The Department opened the permit application for public comment, and neighbors participated in the proceedings

---

[1] After the district coordinator's determination, Snowstone and landowners entered into a new purchase and sale agreement that was modified to address the district coordinator's concerns. On appeal, the environmental division considered the modified agreement.

3

by submitting a number of comments and questions. In response, Snowstone revised its proposed plan. ANR approved Snowstone's revised application, authorizing operations under the MSGP (ANR Authorization) in June 2019.

¶ 8. In July 2019, neighbors timely appealed ANR's determination to the environmental division, filing a statement of questions pursuant to the Vermont Rules for Environmental Court Proceedings.[2] See V.R.E.C.P. 5(f) ("Within 21 days after the filing of the notice of appeal, the appellant shall file . . . a statement of the questions that the appellant desires to have determined."). Snowstone moved to dismiss neighbors' appeal and statement of questions, arguing that neighbors lacked standing under 10 V.S.A. § 8504(a) to raise the legal issues presented in questions 1-18, 22, 26, and 28 (all dealing with the ANR Authorization to proceed under a MSGP). Snowstone argued that neighbors' remaining questions 19-21, 23-25, and 27 raised issues outside the court's jurisdiction as it related to the ANR Authorization.

¶ 9. On the issue of standing, the Environmental Division concluded that neighbors had not presented adequately grounded claims that the ANR Authorization could have an adverse impact on their particularized interests, and thus they lacked statutory standing to appeal the ANR Authorization. Specifically, the court rejected neighbors' two assertions of potential impact on their particularized interests. First, the court found the record did not support neighbors' assertion that their "interest[s] would be affected by water pollution" if Snowstone were to "improperly manage[] stormwater runoff from the Snowstone project." Noting that there was no basis to assume the project would be "improperly managed," the court said that it could not conclude that neighbors' assertions "create[d] even a possibility of the impacts [they] assert[ed]." Second, the court rejected neighbors' contention that they had "suffered a reduction in their home values by

---

[2] This appeal of the ANR authorization is distinct from the JO appeal that remained pending at the time, although the court coordinated the proceedings; as reflected below, it issued some subsequent orders in both dockets. The trial court's disposition of the JO appeal is the subject of a separately docketed appeal to this Court.

virtue of the proposed project," finding no legal authority to support considering impacts on home value as a basis for standing to appeal an ANR authorization to operate under an MSGP.[3]

¶ 10. The Environmental Division also dismissed neighbors' remaining questions. It concluded that questions 19-21 were premised on unsubstantiated speculation that Snowstone's project would exceed the proposed 0.93-acre area. And, the court determined that questions 23-25 and 27 sought improper "advisory opinion[s] on the general topics of what other permits may be required" for the project.

¶ 11. In a separate order issued the same day, the Environmental Division dismissed as moot neighbors' motion in both dockets (the JO appeal and the ANR Authorization appeal) for a limited site visit. The court reasoned that it had determined neighbors lacked standing to appeal the ANR Authorization, and neighbors had not requested further hearing in the JO appeal, so a site visit was no longer necessary. Finally, in another separate order issued that day, the court granted landowners' motion to intervene in the appeal of the ANR Authorization as well as the outstanding appeal from the district coordinator's JO.

¶ 12. On appeal to this Court, neighbors challenge all three trial court orders relating to the appeal of the ANR Authorization. They argue that the Environmental Division erroneously dismissed most of their questions for lack of statutory standing without an evidentiary hearing, and they challenge the court's determination that the remaining questions were outside the court's jurisdiction or improperly sought an advisory opinion. Second, neighbors argue that, because they have standing and did request further hearing in the JO appeal, the court erred in dismissing as moot their motion for a limited site visit. Finally, neighbors contend that the Environmental

---

[3] Although the environmental division cited two decisions involving constitutional standing in its decision, the bulk of its analysis focused on the related but distinct statutory standing requirement in 10 V.S.A. § 8504(a) as applied to the respective questions on appeal. Snowstone's arguments on appeal likewise focus on the statutory standing requirements. We limit our analysis accordingly.

Division abused its discretion in finding landowners' motion to intervene timely. We address each argument in turn.

## I. Snowstone's Motion to Dismiss

¶ 13. We conclude that the Environmental Division erred in dismissing the lion's share of neighbors' questions on appeal for lack of statutory standing, and in dismissing questions 20-21 as outside the scope of the appeal, but we affirm the dismissal of questions 19, 23-25, and 27. First, we conclude that neighbors have standing to appeal the ANR Authorization because neighbors have shown a reasonable possibility that the authorization may affect their particularized interests. Second, we agree with the trial court's dismissal of neighbors' question number 19 because it was not within the scope of the appeal, but disagree with the trial court's dismissal of neighbors' questions 20-21 concerning the "off-site" activities identified in Snowstone's SWPPP because they were within the scope of the appeal. Lastly, we affirm the Environmental Division's dismissal of questions 23-25 and 27 because they sought impermissible advisory opinions from the court.

### A. Standing

¶ 14. Neighbors argue on appeal that the Environmental Division erred in dismissing their questions relating to the ANR Authorization for lack of standing as "persons aggrieved" under 10 V.S.A. § 8504(a). They contend there is a reasonable possibility that Snowstone's stormwater discharge may affect their interests based on an engineer's affidavit asserting that proper stormwater management was not possible within the proposed project footprint and describing potential impact on neighbors' lands.[4] The affidavit stated in part:

> Due to the inadequacy of the design of the proposed stormwater system, polluted water runoff from the proposed [p]roject may overwhelm the proposed [best management practices], and could

---

[4] Neighbors alternatively argue for statutory standing on the basis that the project would lead to a reduction in their home values. Because we conclude that they have standing on the basis of the potential stormwater impacts on their physical property and abutting road, we do not address this alternate argument.

6

possibly run down the [landowners'] drive and Tierney Road, following the course of the road, and effectively rutting and/or creating a sluiceway for polluted water, following the course of Tierney Road.

The polluted runoff may cause damage to Tierney Road, and may also enter the properties along Tierney Road.

[T]he same problem could affect all persons whose property is accessed on Tierney Road, or which are otherwise downstream of the proposed [p]roject.

The result of the inadequate stormwater design could result in undue pollution to neighboring properties, including the properties owned by the various [n]eighbors who are party to this appeal.

¶ 15.    We review a dismissal for lack of standing without deference, applying the same standard as the trial court.  Baird v. City of Burlington, 2016 VT 6, ¶ 11, 201 Vt. 112, 136 A.3d 223.  Examining the plain language of the operative statute, we recognize that statutory standing under § 8504(a) may be predicated on allegations, and the showing required to establish statutory standing under §8504(a) is minimal.  We conclude that neighbors' expert affidavit exceeds this threshold by describing a reasonably possible injury to neighbors resulting from stormwater runoff from the project.

¶ 16.    Under 10 V.S.A. § 8504(a), "any person aggrieved by an act or decision of the Secretary . . . may appeal to the Environmental Division" within thirty days of the decision or act. A "person aggrieved" is one "who alleges an injury to a particularized interest" protected by one or more environmental protection statutes enumerated in § 8503.  10 V.S.A. § 8502(7).  In that sense, "aggrieved person" status for the purposes of standing to appeal under § 8504(a) is related to "particularized-interest" based standing in Act 250 cases.  See 10 V.S.A. § 6085(c)(1)(E) (according party status to any "other person who has a particularized interest protected by this chapter that may be affected" by a decision of a district commission); cf. In re Green Mountain Power Corp., 2018 VT 97, ¶¶ 17, 24, 208 Vt. 349, 198 A.3d 36 (construing PUC Rule 2.209, which authorizes intervention by persons who demonstrate "a substantial interest which may be adversely

7

affected by the outcome of the proceeding" to require a "particularized interest"). A "particularized interest" for the purposes of these environmental statutes is an interest that sets the interests of the would-be party apart from the general interests of others. See Green Mountain Power Corp., 2018 VT 97, ¶¶ 17-20 (concluding that competitor company that was also a ratepayer did not have sufficiently particularized interest where company did not demonstrate any interest that set it apart from generic ratepayers).

¶ 17. This is the first time we have been called upon to assess the quantum of evidence required to establish statutory standing under § 8504, and we conclude that the necessary showing is minimal. We base this conclusion on the plain language of the statute defining a "person aggrieved" for purposes of statutory standing under § 8504:

> "Person aggrieved" means a person who <u>alleges</u> an injury to a particularized interest protected by the provisions of law listed in section 8503 of this title, attributable to an act or decision by a district coordinator, District Commission, the Secretary, or the Environmental Division that can be redressed by the Environmental Division or the Supreme Court.

10 V.S.A. § 8502(7) (emphasis added). Significantly, the statute requires only an allegation of injury, and not any measure of proof. While a frivolous or entirely speculative allegation may not be sufficient to support statutory standing under § 8504, the statute does not require that a person seeking statutory standing to appeal under § 8504 satisfy any evidentiary threshold in showing a potential injury to a particularized interest. In construing the statute, "[w]e presume that the plain, ordinary meaning of statutory language is intended." State v. Hinton, 2020 VT 68, ¶ 11, __ Vt. __, 239 A.3d 246 (quotation omitted). "If the plain language is clear and unambiguous, we enforce the statute according to its terms." Id. (quotation omitted). This statute authorizes standing based on a particularized interest and non-frivolous allegations that are not entirely speculative.[5]

---

[5] We note that the standard for establishing standing to appeal under § 8504(a) may not be the same as that for establishing standing to challenge an Act 250 permit as a person with a particularized interest. See 10 V.S.A. § 6085(c)(1)(E) (according party status to any "other person

8

¶ 18. Our understanding of the statute is consistent with the Environmental Division's own persuasive interpretation. See, e.g., In re N.E. Materials Grp. LLC, No. 35-3-13, 2013 WL 5288469, at *4 (Vt. Super. Ct. Envtl. Div. Aug. 21, 2013), https://www.vermontjudiciary.org/sites/default/files/documents/NE%20Materials%20%2035-3-13%20Vtec%20Party%20Status.pdf [https://perma.cc/F6QJ-48PX] (emphasizing in the context of assessing whether movants had established particularized protected interest sufficient to support interested-person status under 10 V.S.A. § 8504(n) that "the claimant need only show that the impact may occur; whether it will occur is a matter to be addressed on the merits"). In North East Materials Group, the Environmental Division concluded that various neighbors had shown a reasonable possibility of harm to their particularized interests in the watercourses on their respective properties even without expert evidence. Id. at *6. The neighbors, whose concerns related to stormwater discharge from a proposed plant, stated specifically: that their properties were downhill from the proposed project; one was "concerned pollutants from the plant could enter a brook that travels through their backyard"; another feared "during storms, runoff from operations at the plant w[ould] contaminate a drainage ditch that r[an] across [their] property"; a third movant "fear[ed] contamination of wetlands and a groundwater-fed well on [their] property"; and the last was concerned because "in the spring, water flows from [a]pplicant's property through a culvert on [their] property." Id. The

_____

who has a particularized interest protected by this chapter that may be affected" by a decision of a district commission) (emphasis added). Section 6085 includes a detailed set of requirements for a person seeking party status on the basis of a "particularized interest," including a requirement that the person provide a description of the potential effect of the proposed project upon the person's interest with respect to each of the relevant criteria or subcriteria under which party status is being requested. Id. § 6085(c)(2). The environmental division has interpreted § 6085(c)(1)(E) to require that a person seeking aggrieved-party status in an Act 250 proceeding before a district commission need only demonstrate a "reasonable possibility" that their particularized interest may be affected. See In re Bennington Wal-Mart Demolition/Constr. Permit, No. 158-10-11, 2012 WL 8898494, at *6 & n.5 (Vt. Super. Ct. Envtl. Div. Apr. 24, 2011), https://www.vermontjudiciary.org/sites/default/files/documents/Bennington%20Walmart%20Demolition%20Construction%20158-10-11%20Vtec%20MSJ%20Party%20Status.pdf [https://perma.cc/XN8P-R53F]. Because neighbors' standing in this appeal is governed by §§ 8501-04, we need not decide whether "reasonable possibility" is the proper standard under Act 250.

neighbors' homes were located, respectively, 0.25 miles, 1 mile, 0.34 miles, and 0.54 miles, from the proposed project. Responding to the permit applicant's argument that the neighbors had not offered technical or scientific evidence to rebut the presumption that the MSGP in that case created, the court recognized that the neighbors might face "a high evidentiary burden . . . on the merits," but that was irrelevant for purposes of a standing analysis. Id. The court concluded that the movants had shown a reasonable possibility of harm to their particularized interests and afforded them standing as persons aggrieved. Id.

¶ 19. In this case, neighbors satisfied the minimal threshold established by statute. Neighbors not only alleged that the potential stormwater runoff might injure them, but also proffered an affidavit from an engineer who described with specificity the way that the asserted inadequacy of the design of the proposed stormwater system might affect neighbors' particularized interests in their property. The affidavit stated that the inadequacy of the stormwater system "may overwhelm the proposed [best management practices], and could possibly run down the [landowners'] drive and Tierney Road," that the polluted runoff "may also enter the properties along Tierney Road" and "could affect all persons whose property is . . . downstream of the proposed [p]roject," and that the inadequate design "could result in undue pollution to neighboring properties," including that of neighbors. Neighbors have not made frivolous or speculative allegations; they have supported their concerns with an expert affidavit that validates their concerns that stormwater runoff may impact their properties. Whether neighbors will be able to prove their case on the merits remains to be seen, but neighbors have sufficiently alleged that the ANR Authorization may affect their particularized interest to attain standing under § 8504(a).[6]

_____

[6] In reaching this conclusion, we do not rely on the environmental division's prior bifurcation order, entered with the agreement of the parties, in which the environmental division ordered Snowstone not to "contest Neighbors' standing in permitting proceedings concerning the proposed quarry or Neighbors' status as 'persons aggrieved' for purposes of standing to intervene in the permitting process or to appeal." Because we conclude that neighbors have standing to raise the challenged questions based on their allegations and expert affidavit, we do not here address

10

## B. Neighbors' Remaining Questions

¶ 20.    Neighbors argue that the court erred in dismissing their remaining questions as improperly before the court.  We conclude that question 19 was outside the scope of the appeal of the ANR Authorization and therefore properly dismissed, but that questions 20-21 were within the scope of the appeal because they sought information about activities Snowstone had included in its SWPPP.  We further conclude that questions 23-25 and 27 sought advisory opinions from the court and were properly dismissed.

### i.  Questions 19-21

¶ 21.    Neighbors raised several questions concerning statements in Snowstone's SWPPP regarding activities that would occur "off-site," at locations not identified in the SWPPP. Specifically, neighbors asked whether such off-site activity will occur "within 5 miles of the project site" (question 19); where the " 'offsite areas' referenced in . . . the SWPPP at which industrial activities subject to MSGP jurisdiction will occur" (question 20); and whether all offsite activities "have appropriate MSGP permit coverage" (question 21).  These questions, according to neighbors, are relevant to whether operations under the MSGP were properly authorized. Snowstone argues that the questions raise issues relating to "one-acre towns" and "involved land," which are at issue in the JO appeal, but not relevant to this appeal of the ANR authorization.  We conclude that question 19 was not relevant to the ANR Authorization and was thus outside the scope of this appeal; however, questions 20-21 were within the scope of the appeal of the ANR Authorization, and we therefore reverse the court's decision dismissing them.

¶ 22.    The MSGP Rules require that an applicant's SWPPP include "a description of the nature of the industrial activities at [an applicant's] facility"; a "general location map . . . with enough detail to identify the location of [applicant's] facility and all receiving waters for

---

whether challenges to statutory standing can be waived, or whether the environmental division's order precluded Snowstone from challenging the factual predicate for neighbors to claim standing as "persons aggrieved" entitled to raise the various questions on appeal.

[applicant's] stormwater discharges"; and a site map showing, in part, locations of fueling stations, vehicle and equipment maintenance, and processing and storage areas "where such activities are exposed to precipitation." Dep't of Envtl. Conservation, Vermont Multi-Sector General Permits for Stormwater Discharges Associated with Industrial Activity 5.1.2 (Aug. 4, 2011), https://dec.vermont.gov/sites/dec/files/wsm/stormwater/docs/MultiSectorGeneralPermit/sw_msg p_2011_FinalPermit.pdf.

¶ 23.    In dismissing these three questions, the trial court relied on the ANR summary, which "ma[de] clear that all activities proposed by Snowstone or authorized by ANR will occur within the 0.64-acre project site or the 0.29-acre access road." The court further noted that neighbors had not presented evidence that Snowstone's activities would occur beyond the confines of the 0.93-acre area and that if they did, Snowstone would be in violation of its MSGP.

¶ 24.    We agree with the court's decision to dismiss question 19, but for a different reason. And we disagree with the court's decision to dismiss questions 20-21. In considering these respective questions, we are mindful of the "general concept that appeal rights must be liberally construed in favor of persons exercising those rights." In re Mahar Conditional Use Permit, 2018 VT 20, ¶ 17, 206 Vt. 559, 183 A.3d 1136 (quotation omitted).

¶ 25.    We conclude that question 19 was outside the scope of the appeal of the ANR Authorization and was therefore properly dismissed. The question asked whether off-site activity would occur "within 5 miles of the project." Based on this Court's review of the record, whether the activities occurred within five miles is relevant to the concept of "involved land" at issue in the JO appeal but not at issue in this appeal of an authorization to operate pursuant to a MSGP. See Act 250 Rules, Rule 2(C)(5), Code of Vt. Rules 12 004 060, http://www.lexisnexis.com/ hottopics/codeofvtrules (defining "involved land" as including "[t]he entire tract or tracts of land, within a radius of five miles, upon which the construction of improvements . . . will occur, and any other tract, within a radius of five miles, to be used as part of the project"). The question of whether

the off-site activities occurred within five miles of the project is thus outside the scope of this appeal.

¶ 26.   By contrast, in construing neighbors' appeal rights liberally, we conclude that questions 20-21 were properly before the court.   The questions were expressly limited to considerations relevant to the ANR Authorization and appear to question whether off-site activities Snowstone identified in its SWPPP have been included within the monitoring and best practice requirements of the MSGP.   Specifically, question 20 asked about " 'offsite areas' . . . at which industrial activities subject to MSGP jurisdiction will occur," and question 21 sought confirmation that off-site areas had "appropriate MSGP permit coverage."   We disagree with the trial court that these questions were based on "unsubstantiated speculation" because they targeted activities that Snowstone itself identified would occur "off-site" in the SWPPP.   Whether these activities were subject to the authorization to act under the MSGP is within the scope of this appeal.

ii.  Questions 23-25 and 27

¶ 27.   The trial court concluded that neighbors' questions 23-25 and 27 "appear[ed] to be unbridled efforts to seek an advisory opinion on the general topics of what other permits may be required for the proposed dimensional stone extraction operations."   On appeal, neighbors concede that these questions concern whether additional permitting was necessary but argue that they raised the issue in public comment and that the questions were properly before the court because such permitting would likely require changes to Snowstone's SWPPP.

¶ 28.   Advisory opinions are those that have no conclusive, legal effect.   See Doe v. Dep't for Children & Families, 2020 VT 79, ¶ 17, __ Vt. __, __ A.3d __.   Courts are not authorized to issue advisory opinions because they exceed the constitutional mandate to decide only actual cases and controversies.   In re S.N., 2007 VT 47, ¶ 9, 181 Vt. 641, 928 A.2d 510 (mem.); see also In re Investigation into Programmatic Adjustments to Standard-Offer Program, 2018 VT 52, ¶ 17, 207

13

Vt. 496, 191 A.3d 113 ("[T]he establishment of legal doctrine derives from the decision of actual disputes, not from the giving of solicited legal advice in anticipation of issues.").

¶ 29. Neighbors here effectively sought the court's advice as to whether Snowstone is required to seek additional permits. The interim order required that Snowstone "promptly make application to [ANR] . . . for all stormwater and discharge permits required for the proposed quarrying operation." Snowstone only sought authorization to operate under an MSGP, and the necessity to seek any other permit was not properly before the court in an appeal of that authorization. Any ruling as to what other permits Snowstone needed, besides the one before it on appeal, would have been a mere advisory opinion, so questions 23-25 and 27 were properly dismissed.

## II. Neighbors' Motion for a Site Visit

¶ 30. Neighbors argue that the Environmental Division erred in finding their motion for a limited site visit moot. In their motion, they had requested that the court allow neighbors' engineer or other agents to enter the landowners' land for a limited site visit to access the land surrounding the project site to examine the area. Neighbors' motion was docketed in both the appeal of the ANR Authorization and the still pending JO appeal.

¶ 31. The court concluded that there was no longer a need for the site visit in connection with the appeal of the ANR Authorization because the court had dismissed all of neighbors' questions on appeal. In connection with the JO appeal, the court concluded that no party had requested a further hearing within thirty days of the ANR Authorization and thus no further evidentiary hearing would be needed. Because there was no reason for a site visit in either docket, the court dismissed neighbors' request as moot.

¶ 32. "[A]n issue becomes moot if the reviewing court can no longer grant effective relief." Chase v. State, 2008 VT 107, ¶ 11, 184 Vt. 430, 966 A.2d 139 (quotation omitted). Because we conclude that neighbors have standing to pursue most of the questions raised in their

14

appeal of the ANR Authorization, at least in that docket, neighbors' request for a site visit is not moot.[7] The neighbors may pursue their motion for a site visit before the trial court.

### III. Landowners' Motion to Intervene

¶ 33.    Neighbors argue that the Environmental Division abused its discretion in granting landowners' motion to intervene in this appeal of the ANR Authorization because the motion was untimely and the court's reasoning in granting the motion was untenable.  Specifically, neighbors argue that intervention poses time and financial burdens on the parties involved; that landowners could have sought intervention sooner and that they "re-tread ground that had already been discussed, briefed, and resulted in party stipulations" two years earlier; that landowners were well-aware of the years-long litigation; and that landowners had a history of active participation in the case prior to seeking intervention.

¶ 34.    The trial court has discretion to deny intervention where a motion to intervene is untimely, and so we review rulings on timeliness for abuse of discretion.  State v. Quiros, 2019 VT 68, ¶ 15, 211 Vt. 73, 220 A.3d 1241.

¶ 35.    We conclude that the Environmental Division did not exceed its discretion in granting landowners' motion to intervene in this appeal of the ANR Authorization.[8]  The court properly considered the factors related to timeliness, and its decision to grant intervention did not exceed its authority.

¶ 36.    If the applicant for proposed development is not the landowner, the owner of the land on which development is proposed is a "party by right" under 10 V.S.A. § 8502(5)(B).  Where a statute establishes a party by right, the party is entitled to intervene in the action "upon timely

---

[7] Questions about the effect of the trial court's ruling declining further evidentiary hearings in the JO appeal are the subject of a separately docketed appeal to this Court.

[8] We note that landowners sought intervention in this appeal from ANR's Authorization (Docket No. 76-7-19 Vtec) as well as in the separately docketed appeal from the JO (Docket No. 151-11-17 Vtec).  We do not address here whether intervention was properly granted in the appeal from the JO.

application." V.R.C.P. 24(a). We have previously identified four factors for trial courts to consider in assessing timeliness: (1) possible harm to plaintiffs; (2) the intervenor's power to have sought intervention earlier; (3) the progress of the case; and (4) the availability of other means to join the case. Shahi v. Madden, 2010 VT 56, ¶ 10, 188 Vt. 142, 5 A.3d 869.

¶ 37. In Shahi, we concluded that a motion to intervene filed several years after the applicant was aware of litigation was timely. Id. ¶ 11. The applicant there sought to intervene in a motion to reconsider an injunction that prohibited applicant's husband from coming within twenty feet of the property line between applicant's and the adjoining neighbor's properties. The applicant had previously filed several motions as an "interested party," which the trial court ignored or denied. The court granted the motion during the pendency of a motion to reconsider and prior to a site visit or issuance of a final injunctive order. We determined that the motion was timely because intervention would not "slow the proceedings" and was "expressly limited to [applicant's] 'property interests.' " Id.

¶ 38. Similarly here, the court recognized that landowners' motion to intervene was filed two years after they signed the revised purchase and sale contract, but emphasized that it was "purely reactionary and limited, such that progress of the case is not affected." That is— landowners only moved to intervene in these ongoing proceedings after neighbors sought permission to conduct a site visit to inspect landowners' land. See Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd., 782 F. Supp. 870, 874 (S.D.N.Y. 1991) (holding motion to intervene was timely where filed once applicant's direct interest in action was implicated although it was two years after applicant was aware of its interest in the action and had been involved directly and indirectly throughout litigation). Landowners largely supported Snowstone's motion to dismiss and thus their intervention was not likely to delay proceedings. Cf. Quiros, 2019 VT 68, ¶ 21 (affirming denial of intervention where significant amount of discovery and settlement talks had already taken place such that agreement between existing parties was "imminent"). And,

unlike in Shahi, landowners here are "parties by right" as defined in 10 V.S.A. § 8502(5)(B) and thus entitled to intervene pursuant to 10 V.S.A. § 8504(n)(2). See 7C C. Wright & A. Miller, Fed. Prac. & Proc. § 1916 (3d ed. 2021) ("Since in situations in which intervention is of right the would-be intervenor may be seriously harmed if intervention is denied, courts should be reluctant to dismiss such a request for intervention as untimely, even though they might deny the request if the intervention were merely permissive.")

¶ 39.     Further, the court determined that landowners' motion to intervene did not raise new concerns that would require revisiting already-litigated issues.  Landowners sought to intervene in the appeal of the ANR Authorization once their direct interest in the matter was implicated by neighbors' request for a site visit, prior to any discovery having been served, any hearing having been scheduled, or any evidence having been submitted.

¶ 40.     As to potential harm, the only possible harm neighbors allege as a result of intervention is general demands of cost and time to the parties.  Considering these circumstances, we cannot conclude that the trial court acted outside its discretion in granting landowners' motion to intervene in the appeal of the ANR Authorization.

The trial court's dismissal of neighbors' appeal as to Questions 19, 23-25, and 27 is affirmed.  The court's dismissal of neighbors' remaining questions as outside the scope of the appeal and for lack of standing and its denial of neighbors' motion for a limited site visit are reversed and remanded for the neighbors to pursue their appeal.  The decision granting landowners intervention is affirmed.

FOR THE COURT:

_____
Associate Justice

17