VERMONT SUPERIOR COURT
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org

ENVIRONMENTAL DIVISION
Docket No. 24-ENV-00035



| Lake Bomoseen Association & LBPT Denial | DECISION ON MOTIONS |
|---|---|

In this matter, Lindsey Waterhouse appeals a decision of the Vermont Agency of Natural Resources (ANR) denying an application for an aquatic nuisance control individual permit submitted by Lake Bomoseen Association (LBA), Lake Bomoseen Preservation Trust (LBPT), and SOLitude Lake Management (together, Co-Applicants) for the application of certain pesticides to Lake Bomoseen for the mitigation of Eurasian watermilfoil.

The following individuals are interested persons appearing before the Court as self-represented litigants: Clarence and Paula Beayon, Joanne Calvi, Lynn Gee, Janet Jones, Cynthia Moulton, Melinda Quinn, Robert Stannard, Jessica and Robert Steele, Allison Stetzel, Jody White and John Widness (together, Interested Persons). The Town of Fair Haven (Fair Haven) has also appeared as an interested party, represented by Kevin L. Kite, Esq. ANR has appeared and is represented by John Zaikowski, Esq. The Vermont Natural Resources Council (VNRC) has intervened in the matter, and is represented by Jon M. Groveman, Esq. Mr. Waterhouse is self-represented. LBPT has moved to intervene in this matter and moved for leave to be represented by a non-attorney, Mr. Waterhouse.

In a September 19, 2024 Entry Order, the Court noted its concerns with how this appeal moves forward when the Co-Applicants had not sought to participate in the appeal. In re Lake Bomoseen Ass'n & LBPT Denial, No. 24-ENV-00035, slip op. at 6 (Vt. Super. Ct. Envtl. Div. Sept. 19, 2024) (Walsh, J.). Additionally, the Court questioned whether Mr. Waterhouse, who is not an applicant and is appearing on behalf of himself as an individual, could maintain the appeal in the absence of the Co-Applicants. The Court concurrently noticed a hearing on these issues. In the interim, ANR filed a motion to dismiss for lack of subject matter jurisdiction addressing these issues and Mr. Waterhouse's standing to appeal, generally. Mr. Waterhouse opposes the motion. Interested Persons and VNRC have supported ANR's motion.

1

On November 18, 2024, the Court held a hearing on these issues via the WebEx platform. A majority of Interested Persons participated for all or part of the hearing. All other parties appeared, with those who are represented appearing through counsel. Elizabeth Bird, President of LBA, participated, though LBA is not a party to this suit. Mr. Waterhouse represented that LBPT's President, Luca Conte, had indicated that he would appear, but did not. No representative from SOLitude Lake Management attended the hearing.

Additionally, prior to the November hearing, LBPT moved to intervene in this matter. The motion was signed and filed by Mr. Conte, not a licensed attorney representing the organization. During the hearing, the Court directed LBPT to either retain counsel, or move for leave to be represented by a non-attorney. Subsequently, LBPT moved to be represented by non-attorney, Mr. Waterhouse. Mr. Waterhouse also filed motions which the Court addresses below.

For the reasons set forth herein, Mr. Waterhouse's motions to strike Fair Haven's December 12, 2024 filing and ANR's December 6, 2024 filing are **DENIED**. LBPT's motion for non-attorney representation and motion to intervene are both **DENIED**. ANR's motion to dismiss is **GRANTED** and this matter is **DISMISSED**. All other motions before the Court are therefore **MOOT**.[1]

<u>Discussion</u>

### I. Mr. Waterhouse's Motions to Strike

On December 27, 2024, Mr. Waterhouse filed two motions to strike. Both are related to filings contemplated by a November 18, 2024 Entry Order of this Court entered after the November 18 hearing in this case. In re Lake Bomoseen Ass'n & LBPT Denial Appeal, No. 24-ENV-00035 (Vt. Super. Ct. Envtl. Div. Nov. 18, 2024) (hereinafter, the November Entry Order). The Court's November Entry Order contemplated parties filing memoranda of law on the issue of how this appeal continues without Applicants appearing in this matter. Any memorandum was be filed on or before December 6, 2024, with responses thereto filed on or before December 13, 2024. It also contemplated a motion by LBPT for leave to be represented by a non-attorney. This motion was to be filed by December 6, 2024, with responses thereto filed on or before December 13, 2024. No additional filings were contemplated or allowed under the November Entry Order.

In Mr. Waterhouse's first motion, he moves to strike Fair Haven's December 12 memorandum in opposition to LBPT's motion for non-attorney representation. Fair Haven opposes the motion.

---

[1] These include Mr. Waterhouse's motion for summary judgment, and ANR's motion to strike Mr. Waterhouse's motion for summary judgment. Additionally, this includes Mr. Waterhouse's "motion for clarification," for which the Court cannot find authority in the Vermont Rules of Civil Procedure.

In his second motion, he moves to strike ANR's December 6 memorandum of law submitted pursuant to the November Entry Order. ANR opposes the motion. Both motions must be denied.

Mr. Waterhouse's motion cites to several Vermont Rules of Civil Procedure. None are directly relevant. The standard to strike a pleading is set forth in V.R.C.P. 12(f) and this is the standard the Court will apply to the motion. Rule 12(f) states:

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 21 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

V.R.C.P. 12(f).

Mr. Waterhouse's motions do not directly address these standards. The Court understands his motion to generally present the argument that allowing the filings would be prejudicial to him. First, Mr. Waterhouse argues that Fair Haven's December 12 filing, entitled "Opposition to [LBPT's] Motion for Leave of Court for Self-Representation" was untimely under the November Entry Order. Mr. Waterhouse asserts that such filing should have occurred on or before December 6 such that he could respond before December 13.[2] Second, Mr. Waterhouse argues that ANR's December 6 memorandum must be stricken because it was served upon him by an email that Mr. Waterhouse asserts lacked sufficient clarity such that he could not respond to the attached filing by December 13.[3] To the extent that either such assertion is within the scope of review on a motion to strike a pleading, and with recognition to Mr. Waterhouse's self-represented status, we address their merits.

The Court has reviewed both of Mr. Waterhouse's motions and the underlying pleadings, pursuant to the standards set forth in V.R.C.P. 12(f). The Court finds no grounds to strike either filing. Fair Haven's filing was timely filed with the Court under the November Entry Order. Pursuant to the November Entry Order, Mr. Waterhouse was not permitted to file a response to that filing. Further, ANR's email conveying its December 6 filing to Mr. Waterhouse was sufficiently clear when

---

[2] Mr. Waterhouse additionally argues that the filing must be stricken because he received it via mail on December 15, 2024, after the filing deadline. The documents were timely, however, because they were filed with the Court by the deadline imposed. See City Bank & Trust v. Lyndonville Savings Bank & Trust Co., 157 Vt. 666, 666 (1991) ("Timely filing means filing at the designated place within the designated time . . ..") (internal citation and quotation omitted). Because the document was timely filed with the Court, and no response thereto was allowable under the November Entry Order, Mr. Waterhouse's argument that he was prejudiced by the delay in receipt is without merit. Further, Fair Haven has represented that it emailed Mr. Waterhouse the filing on December 12, 2024.

[3] The Court notes that Mr. Waterhouse does not assert that ANR's memorandum itself, which was attached to that email was unclear in its contents. Review of the memorandum demonstrates that it was explicitly filed in response to the Court's November Entry Order. The Court further notes that ANR's filing was timely because it was filed with this Court on December 6. See City Bank & Trust, 157 Vt at 666.

considering the totality of its context.[4] Thus, both of Mr. Waterhouse's motions to strike are **DENIED**.

## II. LBPT Motions

LBPT is one of three Co-Applicants that appeared below. Only LBPT has made any attempt to participate in this matter. Neither LBA nor SOLitude Lake Management has appeared before this Court.

On October 19, 2024, LBPT, pro se, though its President Luca Conte, moved to intervene in this matter pursuant to V.R.C.P. 24(a). Following the November 18, 2024 hearing, the Court issued an Entry Order directing LBPT, or LBA, that appeared through its President Ms. Bird at the November hearing informally, to file a motion for leave to be represented by a non-attorney by December 6, 2024.[5] Alternatively, LBPT could hire an attorney and direct them to file their notice of appearance by December 6, 2024. If a lawyer appeared on behalf of LBPT, they were to file a supplemented motion to intervene signed by the attorney representing LBPT.[6]

On December 6, 2024, LBPT filed a motion for leave to be represented by a non-attorney, Mr. Waterhouse.[7] It did not supplement its motion to intervene. For the reasons discussed below, LBPT's motion for non-attorney representation and motion to intervene are **DENIED**.

First, corporate entities must be represented by an attorney or file a motion seeking permission for a non-attorney to represent the entity. Vt. Agency of Nat. Res. v. Upper Valley Reg'l Landfill Corp., 159 Vt. 454, 455 (1992). Such a motion must demonstrate the four necessary factors described in Upper Valley Reg'l Landfill Corp. They are:

> (1) the organization cannot afford to hire counsel, nor can it secure counsel on a pro bono basis, (2) the proposed lay representative is authorized to represent the organization, (3) the proposed lay representative demonstrates adequate legal knowledge and skills to

---

[4] This includes the fact that the attachment to the email included a PDF entitled "2024.12.06 ANR Memorandum of Law CL.pdf." See Waterhouse Ex. 1. The attachment, without opening it, explicitly represents that it was a memorandum on law dated December 6. Further, that the document, which the parties do not dispute is the same document filed with this Court on the same day, explicitly states that it was filed pursuant to the November Entry Order. That Mr. Waterhouse did not open the attachments to an email sent to him stating that those attachments were "filed with the environmental Court today" does not make the email insufficient. Further, ANR asserts that it also sent these filings to Mr. Waterhouse via mail and has provided email correspondence between Mr. Waterhouse and ANR indicating that he was aware of the context of ANR's filing at least as of the morning of December 11, before the deadline to file a response. In any event, the filings were timely filed with the Court and are substantially similar to relevant portions of ANR's motion to dismiss, to which Mr. Waterhouse has extensively replied to.

[5] The Court did not address any motions or filings by SOLitude Lake Management because it had not appeared, submitted any filings, or attended any hearings or status conferences in this matter, formally or informally.

[6] This same process was available to LBA and SOLitude Lake Management.

[7] Neither LBA nor SOLitude Lake Management filed motions by the December 6, 2024 deadline.

4

represent the organization without unduly burdening the opposing party or the court, and (4) the representative shares a common interest with the organization.

Id. at 458.

LBPT's motion must be denied for failing to comply with the second and third factors. With respect to authorization, the motion states that Mr. Waterhouse was elected by vote of the LBPT Board of Directors. No exhibit or evidence of that vote, such as meeting minutes or an affidavit, has been provided. At the end of the motion, there is a declaration containing a typed e-signature of Mr. Conte stating that "I grant [Mr. Waterhouse] authority to represent [LBPT] as a non-attorney" in this docket. Mr. Conte's declaration contradicts the body of the text, which asserts that authorization was granted through vote of the Board of Directors, not by Mr. Conte as President of the organization. Further, in Upper Valley, the Vermont Supreme Court noted the need for evidence of proof of authorization. 159 Vt. at 458. What has been provided is insufficient to be considered evidence of authorization to represent LBPT because the declaration is insufficient to be considered an affidavit of Mr. Conte and the declaration itself is contradictory to the representation made within the motion.

Further, and importantly, Mr. Waterhouse does not satisfy the third factor of the Upper Valley analysis. There is no assertion that Mr. Waterhouse has legal knowledge or skills sufficient to allow him to represent LBPT without unduly burdening the Court or other parties. While Mr. Waterhouse may have technical knowledge and experience as an environmental engineer that may be relevant to technical aspects of the underlying application, the third factor of Upper Valley requires that the proposed lay representative have adequate legal knowledge and skills to represent the organization. Mr. Waterhouse's filings and participation in this matter in his representation of himself cause the Court to be concerned that he does not have sufficient legal knowledge and skills to represent LBPT without unduly burdening the Court and other parties.

First, multiple filings show a misunderstanding of the Vermont Rules of Civil Procedure, the Vermont Rules of Environmental Court Proceedings, and Environmental Division caselaw. For instance, Mr. Waterhouse's initial Statement of Questions was submitted as a 29-page brief and lacked the contents required for a Statement of Questions. See In re Champlain Marina, Inc., No. 28-2-09 Vtec, slip op. at 1–2 (Vt. Super. Ct. Envtl. Div. July 31, 2009) (explaining that the "statement of questions should be a short, concise and plain statement…"); In re Conlon CU Permit, No. 2-1-12 Vtec, slip op at 1 (Vt. Super. Ct. Envtl. Div. Aug. 30, 2012) (Durkin, J.) (establishing that the statement of questions should not include detailed factual or legal information). His since-revised Statement of Questions still is not proper, misunderstands the scope of this Court's review on appeal, and would

5

require revision if this case were to continue. Additionally, he has since repeatedly argued that other parties' failure to respond or object to the factual allegations raised in his Statement of Questions conclusively establishes those facts and precludes opposition thereto. This argument, while made in multiple filings, is the basis for a 16-page motion for summary judgment and is a fundamental misunderstanding of the procedure before this Court and function of a Statement of Questions.

Additionally, Mr. Waterhouse's filings and representations to the Court fundamentally misunderstand the scope of this Court's de novo review and trial, despite multiple explanations by the Court and by other parties through their filings. Even after this Court's November 18, 2024 hearing, at which the Court provided him with further information regarding the Court's de novo review, Mr. Waterhouse has reiterated his continued misunderstanding of this Court's review in this appeal. For all these reasons, to date, Mr. Waterhouse's lack of legal knowledge, skill or experience has significantly burdened the Court and other parties through irregular and voluminous filings in which procedural and substantive law are frequently misunderstood or improperly applied. LBPT's motion for non-attorney representation is **DENIED**.

Because we deny LBPT's motion for non-attorney representation, LBPT's motion to intervene must be denied. Again, LBPT is an organization that must be represented by an attorney or be granted leave of the Court for non-attorney representation. As set forth herein, LBPT has neither retained counsel nor been granted leave for non-attorney representation. Despite this, LBPT's motion is submitted by Mr. Conte, LBPT's President, who is not LBPT's attorney and is not authorized to represent LBPT in this appeal.[8] Thus, the motion is insufficient because LBPT did not retain a licensed attorney and was not granted leave for non-attorney representation and must be **DENIED**.[9]

### III.    ANR's Motion to Dismiss

V.R.C.P. 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. When reviewing such a motion, this Court accepts all uncontroverted factual allegations as true and construes

---

[8] The Court notes that Mr. Conte was also not the proposed non-attorney representative of LBPT.

[9] Even if LBPT hired an attorney or was successful in its motion for non-attorney representation, the Court has concerns with the timeliness of the motion. LBPT received proper notice of ANR's decision denying the application and its ability to appeal that decision to this Court in April 2024. LBPT received notice from Mr. Waterhouse of his appeal to this Court. It chose not to appeal the decision to this Court or participate in the matter. Approximately 6 months after this appeal was filed, and approximately 5 months after any cross appeal or notice of appearance should have been filed, LBPT moved to intervene in this case. The motion states that LBPT is only moving to intervene at this time because the Court recognized that the absence of the Co-Applicants, including LBPT, has jurisdictional consequences for this appeal. Such a motion, filed only after it appears a party's interest may be negatively impacted, can be grounds to conclude a motion is untimely. See 171234 Canada Inc. v. AHA Water Co-op., Inc., 2008 VT 115, ¶ 20, 184 Vt. 633 (stating that a party's motion to intervene was untimely when it waited to intervene until after the Court had granted summary judgment against the party's interest); State v. Quiros, 2019 VT 69, ¶ 10 (indicating that an intervention by a nonparty was untimely when settlement negotiations had progressed to the point that disposition of the case was imminent). These facts demonstrate that LBPT had the ability to intervene in this matter well before the present motion.

them in the light most favorable to the nonmoving party.  Rheaume v. Pallito, 2011 VT 72, ¶ 2, 190 Vt. 245.

For the reasons set forth below, we conclude that the Court lacks jurisdiction to consider the present appeal.  First and foremost, none of the three Co-Applicants have appeared in this appeal.[10] Failure of the Co-Applicants to appear is a de facto abandonment of the application because no party exists to present the proposed project to the Court and to meet the burdens placed on applicants when this Court undertakes its de novo review.

In the alternative, and additionally, we conclude that Mr. Waterhouse, the only Appellant, lacks standing to bring this appeal because he has failed to demonstrate a concrete and particularized injury to his interest that is redressable by this Court.

Mr. Waterhouse, in his individual capacity, appeals ANR's decision below denying Co-Applicants' application for an individual aquatic nuisance control permit.[11]  ANR sent Co-Applicants notice of that denial. Co-Applicants were then served with notice of this appeal as required by V.R.E.C.P. Rule 5(b)(4) because they are parties by right under 10 V.S.A. § 8502(5).  It is not disputed that LBA and LBPT are aware of this action.[12]  Despite this notice and awareness, no Co-Applicant has successfully appeared before this Court.  Thus, there is no applicant to support the application [13] This Court cannot hear this appeal without the Co-Applicants appearing.

First, the scope of this Court's review of this de novo appeal is defined by the scope of ANR's review of the permit application below.  In re R. L. Vallee, Inc., No. 7-1-17 Vtec, slip op. at 6 (Vt. Super Ct. Envtl. Div.  July 18, 2017) (Walsh, J.) ("Our reach in this review is as broad as that of ANR when it considered the permit, but not broader") (citing In re Torres, 154 Vt. 233, 235 (1990)).  This means that we consider the application that came before ANR under the substantive standards that applied to ANR's review of the application below.  See 10 V.S.A. § 8504(h); V.R.E.C.P. 5(g) (noting

---

[10] This is despite LBPT and LBA both providing letters to the Court that they do generally support the spraying of pesticides in Lake Bomoseen and Mr. Waterhouse's appeal.  The appearance of Co-Applicants is required for the Court to have the ability to potentially impose necessary conditions on the Co-Applicants. Further, it is clear by the documents provided in opposition to the pending motion that LBA and LBPT could not garner sufficient support within the organizations to allow active participation in this matter.

[11] At the time Mr. Waterhouse filed this appeal, he was not a member of any of the Co-Applicant organizations. It has been alleged he was at one point a member or board member of LBA and/or LBPT, including presently a member of the Board of LBPT.  Mr. Waterhouse's membership of either organization is irrelevant, however, because he appealed ANR's decision as an individual.

[12] No party, within this current motion or at any point in this action, has fully explained to the Court what SOLitude Lake Management is and its connection to the application.  SOLitude Lake Management has not appeared in this action.

[13] As discussed above, LBPT has moved to intervene in this matter and that motion has been denied.  For the reasons set forth herein, that sole motion to intervene, even if the Court had granted it, does not cure the deficiencies in this appeal as there were three Co-Applicants below.

that, apart from "on-the-record" appeals not relevant here, all appeals in this Court made pursuant to Rule 5 "shall be by trial de novo").

A de novo proceeding before this Court is "one where the case is heard as though no action had been held prior thereto." In re Poole, 136 Vt .242, 245 (1978); see also In re Preseault, 130 Vt. 343, 348 (1972) (noting that a de novo proceeding is one in which "all evidence is heard anew[] and the probative effect thereof determined" as though no decision had been previously rendered) (citation omitted). Because this matter is conducted by "trial" or "hearing" de novo, as opposed to "review de novo," this review process requires and allows the taking of new evidence. See State v. Madison, 163 Vt. 360, 368—69 (1995) (distinguishing the terms "hearing de novo" and "trial de novo" from the term "review de novo" and noting that de novo trials/hearings contemplates a hearing without consideration for any action held prior thereto, and conversely "de novo review" is a procedure that might not require a detailed or extensive judicial record making) (citing Chioffi v. Winooski Zoning Bd., 151 Vt. 9, 11 n. 2 (1989) (internal quotations and citations omitted).[14]

Pursuant to 10 V.S.A. § 1455(d), an applicant for an aquatic nuisance control permit bears the burden of demonstrating that their proposal complies with the standards therein. Put another way, § 1455(d) provides that applicants bear the burden of proving that their applications meet the requisite standards. The burden of proof consists of both a burden of production and a burden of persuasion. See In re Route 103 Quarry, No. 205-10-05 Vtec, slip op. at 8 (Vt. Envtl. Ct. Nov. 22, 2006) (Durkin, J.) *remanded on other grounds* 1007 VT 66, *aff'd* 2008 VT 88. The burden of production requires the burdened party "to produce sufficient evidence for a [reviewing body], or this Court on appeal, to make a factual determination," while the burden of persuasion obligates the burdened party to persuade the fact finder that certain facts are more likely true than not. In re Eastview at Middlebury, Inc., No. 256-11-06 (Vt. Envt. Ct. Feb. 15, 2008) (Durkin, J.) (citing In re Denio, 158 Vt. 230, 237—38 (1992), *aff'd* 2008 VT 98.

Here, the application before the Court has three Co-Applicants: LBA, LBPT, and SOLitude Lake Management. Together, the Co-Applicants bear the burden of proof as defined above. Co-Applicants are not before the Court. LBA, in a letter provided to the Court in opposition to this motion, has stated that it was unable to reach a consensus on filing an appeal and, despite participating

---

[14] It is for this reason that Mr. Waterhouse's assertions that "the record" before the Court already includes the application, including associated materials, such that the Court need not take new evidence, that the decision below is in error, as well as any citation to cases from other jurisdictions related to <u>review</u> de novo as opposed to <u>trial</u> de novo are not correct statements of law. There is no "record" before the Court in this case. The Court has not yet conducted trial and, as such, there is no evidence before the Court at this point in the proceeding. In a de novo trial, new evidence must be presented and admitted, subject to the Vermont Rules of Evidence, at which point the Court, standing in the shoes of ANR, may weigh such evidence and reach any requisite conclusion based on that evidence.

in this Court's November 18, 2024 hearing, has taken no steps to intervene in this action. SOLitude Lake Management has been fully uninvolved in this appeal. This inaction on behalf of both organizations indicates to the Court that they have withdrawn their support for the application.[15] Further, for the reasons set forth above, LBPT is not a party before the Court in this matter. Even if LBPT was a party, however, this appeal would still lack two-thirds of its Co-Applicants. There has been no evidence or offer that LBPT has authority to move forward with respect to the application absent these other two Co-Applicants. Functionally, when two of the three Co-Applicants fail to participate in this matter, and at least one has indicated that it will not participate, the application is deemed to be withdrawn.[16] An application requires applicants; it requires those who submitted it below to remain active and sponsor its contents. Without an application before the Court, supported by the Co-Applicants who submitted it, the Court lacks the ability to review it. Functionally, without an applicant before the Court to support the application and satisfy its burden of proof with respect to the application any decision by this Court would be an impermissible advisory opinion. See In re Snowstone Stormwater Discharge Authorization, 2021 VT 36, ¶ 28, 217 Vt. 587 ("Courts are not authorized to issue advisory opinions because they exceed the constitutional mandate to decide only actual cases and controversies.").

ANR, VNRC and Interested Persons additionally challenge Mr. Waterhouse's standing to participate in this appeal. "[A]ny person aggrieved by an act or decision of the Secretary . . . may appeal to the Environmental Division" within 30 days of the date of the act or decision. 10 V.S.A. § 8504(a). A "person aggrieved" is "a person who alleges injury to a particularized interest protected by the provisions of law listed in section 8503 of this title, attributable to an act or decision by . . . the Secretary . . . that can be redressed by the Environmental Division or the Supreme Court. 10 V.S.A § 8502(7). "A 'particularized interest' for the purposes of these environmental statutes is an interest that sets the interests of the would-be party apart from the general interests of others." Snowstone,

---

[15] LBA's letter indicates that their lack of participation should not be construed as a lack of support for the efforts to use pesticides in the lake, generally, to mitigate Eurasian milfoil. LBA, however, has not demonstrated specific support for the application before the Court in this appeal by appearing to support it. To the extent that both LBA and LBPT's letters filed with Mr. Waterhouse's opposition to ANR's motion assert that their lack of participation in this appeal should not be "misconstrued" as a lack of support for the underlying application, the Court concludes that the only reasonable manner to construe their lack of appearance in this appeal is as a de facto withdrawal of formal support of the application. This is supported by their knowledge of this appeal and affirmative decision to not appear.

[16] It is for this reason that, while not requested, the Court will not require participation by the Applicants who have declined to participate in this matter. "We do not believe it appropriate to compel an applicant to prosecute an application that they wish to withdraw . . .." In re Punderson 2-Lot Subdivision, No. 106-10-18 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Sept. 27, 2019) (Durkin, J.).

2021 VT 36, ¶ 16, 214 Vt. 587 (citing Green Mountain Power Corp., 2018 VT 97, ¶¶ 17—20, 208 Vt. 349.

In addition to the requirements for statutory standing, a party must demonstrate that they can satisfy Article III Constitutional standing. See In re Capitol Plaza 2-Lot Subdivision & Major Site Plan, Nos. 3-1-19 Vtec, 4-1-19 Vtec, slip op. at 5 (Vt. Super. Ct. Envtl. Div. Nov. 12, 2019) (Walsh, J.) (concluding that "the statutory requirements [to qualify as an interested person] may coexist and overlap with constitutional requirements, but they are not the same" and that such statutory requirements "do[] not eliminate the need for appellants to demonstrate the elements of constitutional standing when challenged") (citations omitted).[17] To establish constitutional standing, a party must demonstrate an injury in fact, causation, and redressability. Hous. Our Seniors in Vermont, Inc. v. Agency of Com. & Cmty. Dev., 2024 VT 12, ¶ 13 (citation omitted). Importantly, a party must show that they suffer a threat of an actual injury to a protected legal interest, rather than mere speculation about a generalized grievance. Id. at ¶ 14 (citation omitted). Like the statutory requirements to qualify as a "person aggrieved," the interest must be redressable by the Court. Id. at ¶ 13.

Mr. Waterhouse asserts that he is a "lifelong" user of Lake Bomoseen for recreational purposes. He provides no understanding of the frequency of his use of the lake for these purposes, or the last time he visited the lake. He asserts that the lake, generally, is being negatively impacted by Eurasian milfoil and a decision of this Court overturning ANR's decision on the application before us will redress this impact. Mr. Waterhouse concedes that he is not an applicant and that, even if this Court were to hear this appeal and reach a different result than ANR, he would have no ability to use any issued permit.[18] Thus, to the extent that Mr. Waterhouse raises a particularized interest[19] giving rise to his standing, this Court is without the ability to redress that alleged injury in this matter because the failure of the Applicants to be parties before this Court is akin to their withdrawing the application.

[17] It is for this reason that Mr. Waterhouse's assertions that constitutional standing standards are irrelevant in this appeal is in error.

[18] To the extent that Mr. Waterhouse argues that his standing is supported by the fact that he is generally supportive of the spraying of pesticides for aquatic invasive species mitigation and that his injury in this matter is the potential for ANR's denial of Applicants' application to be used to support future denials of as-yet submitted applications for similar spraying, at Lake Bomoseen or in other waters in Vermont, this is the definition of a request for an advisory opinion that this Court will not, and cannot, issue. See Snowstone, 2021 VT 36, ¶ 28. It does not give rise to Mr. Waterhouse's standing to appeal ANR's decision to this Court.

[19] The Court is not convinced that Mr. Waterhouse has demonstrated a sufficient injury to a particularized interest. Rather, his injury appears generalized and speculative as it has been presented in this action. If this appeal is dismissed, the status quo remains, and no pesticides will be applied to Lake Bomoseen. If this appeal moves forward, however, and this Court issues a permit, Mr. Waterhouse has conceded that he has no ability or authority to carry out such a permit. Again, the Co-Applicants are not before the Court. Therefore, there is no tangible relief that this Court can issue which would affect a particularized injury to Mr. Waterhouse.

Thus, ANR's motion to dismiss is **GRANTED**. Co-Applicants have either not appeared or have been unsuccessful in attempting to appear in this matter and, functionally, have withdrawn this application.

<u>Conclusion</u>

For the forgoing reasons, Mr. Waterhouse's motions to strike are **DENIED**. Further, LBPT's motion for non-attorney representation fails to satisfy the standards required for a non-attorney to represent a corporate entity and is **DENIED**. Furthermore, LBPT's motion to intervene is **DENIED** as it lacks an approved non-attorney representative and has not retained a licensed attorney. Finally, this Court lacks jurisdiction to hear this appeal without the three Co-Applicants appearing before the Court to present and support their application. As the sole appellant, Mr. Waterhouse has failed to demonstrate a concrete and particularized injury which is redressable by this Court in light of the Co-Applicants' absence. Accordingly, we **GRANT** ANR's motion to dismiss.

All other motions before the Court are therefore **MOOT**.[20]

This concludes the matter before the Court. A Judgment Order accompanies this Decision. Electronically signed this 10th day of January 2025 pursuant to V.R.E.F. 9(D).

Thomas G. Walsh, Judge
Superior Court, Environmental Division

---

[20] These include Mr. Waterhouse's motion for summary judgment, and ANR's motion to strike Mr. Waterhouse's motion for summary judgment. Additionally, this includes Mr. Waterhouse's "motion for clarification," for which the Court cannot find authority in the Vermont Rules of Civil Procedure.