NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 72A

No. 2020-197

| | |
|---|---|
| In re Snowstone, LLC Act 250 Jurisdictional Opinion (Michael Harrington, et al., Appellants) | Supreme Court |
| | On Appeal from Superior Court, Environmental Division |
| | January Term, 2022 |

Thomas S. Durkin, J.

Merrill E. Bent of Woolmington, Campbell, Bent & Stasny, P.C., Manchester Center, for Appellants.

Lawrence G. Slason of Law Office of Salmon & Nostrand, Bellows Falls, for Appellee.

David R. Cooper of Facey Goss & McPhee P.C., Rutland, for Appellees/Intervenors Justin and Maureen Savage.

Thomas J. Donovan, Jr., Attorney General, and Melanie Kehne, Assistant Attorney General, Montpelier, for Vermont Natural Resources Board.

Jamey Fidel and Jon Groveman, Montpelier, for Amicus Curiae Vermont Natural Resources Council (on reargument).

James A. Dumont of Law Office of James A. Dumont, PC, Bristol, for Amicus Curiae Darby Bradley, Elizabeth Courtney, Jon Groveman, Marcey Harding, Stephen Reynes, Ronald Shems and Diane Snelling (on reargument).

PRESENT: Robinson[1], Eaton, Carroll and Cohen, JJ., and Morris, Supr. J. (Ret.), Specially Assigned

¶ 1. **COHEN, J.** In this case, the Environmental Division concluded that Snowstone, LLC, did not need an Act 250 permit to operate a small dimensional-stone extraction operation on

---

[1] Justice Robinson did not participate in this amended opinion.

a 0.93-acre parcel of land to be purchased from landowners Justin and Maureen Savage. It found the proposed sale between landowners and Snowstone was an arm's-length transaction and that neither party would exercise "control" over the land to be held by the other such that they should be considered one "person" for Act 250 purposes. Neighbors challenge these conclusions on appeal and challenge other aspects of the court's merits decision as well. We affirm.[2]

## I. Underlying Proceedings

¶ 2. The record indicates the following. Landowners own a 176-acre parcel of undeveloped land in Cavendish, Vermont, a municipality that does not have permanent zoning and subdivision bylaws. Snowstone, LLC, seeks to buy a small portion of landowners' property to operate a dimensional-stone extraction project. Snowstone and landowners executed a contract whereby, subject to several contingencies, Snowstone would purchase a 0.64-acre portion of landowner's property and a 0.29-acre access easement over an existing road on the property. The combined acreage of the proposed project will be 0.93 acres. There are no other commercial or industrial improvements on the 176 acres or in the vicinity.

¶ 3. After executing the contract, Snowstone requested a jurisdictional opinion from the Act 250 district coordinator. See 10 V.S.A. § 6007(c) (authorizing jurisdictional opinions). Neighbors filed comments, arguing that an Act 250 permit was required. The district coordinator concluded that the proposed project constituted "development," defined here as "[t]he construction of improvements for commercial or industrial purposes on more than one acre of land" given that Cavendish is "a municipality that has not adopted permanent zoning and subdivision bylaws." Id. § 6001(3)(A)(ii). Relying on In re Vitale, 151 Vt. 580, 563 A.2d 613 (1989), the district coordinator determined that the project land and the remainder of the 176-acre parcel would be "controlled" by the same "person" and thus both parcels must be considered together for purposes of determining Act 250 jurisdiction.

---

[2] In response to neighbors' motion to reargue, this Court withdrew the original opinion, which issued on September 3, 2021, and replaced it with this amended opinion.

¶ 4.     Snowstone appealed to the Environmental Division (the JO appeal) and asked the court to decide whether: (1) the proposed quarry constituted "development" for a commercial purpose on more than one acre of land; and (2) the entire tract of land should be considered as owned by a single "person" for purposes of determining Act 250 jurisdiction. Snowstone submitted a revised version of its contract with landowners that reduced the purchase price, removed a right of first refusal, and excised a deed restriction. Neighbors participated in the appeal as intervenors, arguing that an Act 250 permit was required and that the project would also require a stormwater discharge permit that would increase the amount of land necessary to operate the project beyond one acre.

¶ 5.     At the parties' request, the court agreed to bifurcate the matter and first determine if the proposed project required an Act 250 permit. It would then order Snowstone to obtain the necessary stormwater permits and it would revisit the stormwater issue if the permit requirements increased the land area necessary for the project beyond one acre.

¶ 6.     Accordingly, the court first determined that the project did not constitute "development" as defined in 10 V.S.A. § 6001(3)(A)(ii) and thus, no Act 250 permit was required. In its initial merits order, the court reached a legal conclusion with respect to the applicability of the doctrine of "involved land" in "one-acre towns," i.e., towns without permanent zoning and subdivision regulations. Following a motion to alter or amend by the Natural Resources Board, the court issued a revised decision, finding it unnecessary to decide if the doctrine of "involved land" applied to one-acre towns because the proposed project would be contained on a tract of land totaling less than one acre, which fell below the jurisdictional threshold set forth in 10 V.S.A. § 6001(3)(A)(ii).

¶ 7.     The court's merits decision rested on its conclusion that the proposed sale was an arm's-length transaction and that one person would not control the 176-acre tract. It described the circumstances leading to the sale, explaining that the parties did not previously know one another and had no prior personal or business dealings. Landowners did not have, and would not acquire,

3

any ownership interest in Snowstone. Snowstone's principal, Jason Snow, learned of the existence of a small quarry on landowners' property from an acquaintance, eventually leading to a discussion with landowners about purchasing the property. Both parties sought to keep the quarry area small. Landowners intended to use the remaining property as their principal residence; Snow did not wish to acquire any more property than he needed to operate his business and he was also aware that, if the project was kept under a certain size, he might avoid the need to obtain an Act 250 permit.

¶ 8.     Snow consulted with an engineer and attorney and hired a surveyor to identify the exact area to be sold to Snowstone. The surveyor identified the stone quarry site as containing 0.64 acres of land. The surveyor identified an old road to the site in passable condition and he plotted out the location of an access easement over landowners' property from the quarry site to a public road. Landowners decided to sell, and Snowstone decided to buy, the stone quarry site and access easement covering a total area of 0.93 acres. The parties negotiated a contract, which they later revised in response to the Act 250 district coordinator's decision. The agreement did not call for or allow landowners to retain any ownership or controlling interest over the lot or easement to be conveyed to Snowstone. The revised contract did not include a right of first refusal or a restriction on future development, terms that had concerned the district coordinator. The court found the testimony of Snow, landowner Justin Savage, and Savage's surveyor credible and noted that neighbors had no evidence to contradict the assertion that the proposed sale was an arm's-length transaction.

¶ 9.     Applying a common-sense definition of "control," the court found that Snowstone would control only the 0.93-acre parcel to be conveyed to it and it would have no control, domination, or governance over any of landowners' remaining property. Landowners similarly would have no control, ownership, or governance over either Snowstone or the property to be conveyed. The court recognized that the parties' negotiations involved some common goals, one of which was to "avoid" Act 250 jurisdiction, but it found no attempt by the parties to unlawfully

4

"evade" the law as in Vitale. It thus concluded that the jurisdictional threshold for Act 250 was not satisfied.

¶ 10. The court directed Snowstone to obtain necessary stormwater permits and inform the court and neighbors within ten days of the permit determination. It further ordered:

> Within thirty (30) days of [the stormwater permit] determination or withdrawal, any [p]arty to this jurisdictional opinion appeal may request that the [c]ourt conduct a further hearing on whether any stormwater permit determination has a relevancy to the legal issue of whether all activities necessary for the operation of the proposed dimensional stone quarry can occur within the 0.93 acres that Snowstone proposes to purchase.

The court warned that if no party requested such a hearing, it would issue a final judgment in the JO appeal.

¶ 11. Snowstone applied for the stormwater permit and neighbors intervened in those proceedings, filing questions and comments. On June 12, 2019, the Department of Environmental Conservation granted Snowstone a multisector general permit (MSGP), authorizing the discharge of stormwater with all treatment activities contained within the 0.93 acres. Neighbors submit that they never received Snowstone's notification of the permit determination, and the record does not reflect that the notification was provided to the court or to neighbors. However, we take judicial notice that on July 5, 2019, neighbors filed a notice of appeal from the grant of the permit to the Environmental Division in a separately docketed matter (the MSGP appeal). See V.R.E. 201(b) (authorizing judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); Miller v. Miller, 2008 VT 86, ¶ 31 n.11, 184 Vt. 464, 965 A.2d 524 (taking judicial notice of family court order issued during pendency of appeal and of fact that party was sentenced in federal court). Despite neighbors' knowledge of the permit determination by at least July 5, the thirty-day deadline to request a hearing in the JO appeal passed, and neighbors did not request a further hearing. On July 26, 2019, forty-four days after the permit determination, neighbors moved to consolidate the JO and MSGP

5

appeals. Following neighbors' request for a site visit, landowners sought and were granted intervention in the JO appeal.

¶ 12. In a subsequent order, the Environmental Division rejected neighbors' contention that their motion to consolidate qualified as a request for a further hearing in the JO appeal, noting that the motion did not specify a request for further hearing and in any event was filed beyond the thirty-day deadline. It dismissed the MSGP appeal for lack of standing. The Environmental Division then entered judgment for Snowstone in the JO appeal, ruling that, for the reasons noted in its initial merits order, the proposed project did not require an Act 250 permit.[3] Neighbors appeal.

## II. Arguments on Appeal

### A. "Development" under 10 V.S.A. § 6001(3)(A)(ii)

¶ 13. Neighbors first challenge the Environmental Division's conclusion that the project did not constitute "development" requiring an Act 250 permit. Neighbors contend that landowners and Snowstone should be considered one "person" for purposes of Act 250 jurisdiction because the proposed sale is not an arm's-length transaction, and the parties are affiliated for beneficial interest. Neighbors point to evidence that they believe supports their position. Neighbors also argue that the entire retained parcel is "involved land" because the right-of-way over landowners' property provides the sole ingress and egress to Snowstone's lot. They cite no legal authority in support of this assertion.

¶ 14. We review the Environmental Division's decision "deferentially." In re Entergy Nuclear Vt. Yankee Discharge Permit 3-1199, 2009 VT 124, ¶ 15, 187 Vt. 142, 989 A.2d 563. The Environmental Division's findings will stand "unless, taking them in the light most favorable

---

[3] In In re Snowstone LLC Stormwater Discharge Authorization, this Court reversed the Environmental Division's dismissal of the MSGP appeal for lack of standing and remanded the matter for consideration on the merits. 2021 VT 36, ¶ 19, __ Vt. __, 256 A.3d 62. That matter is currently pending in the Environmental Division. Nothing in our decision here should be construed as precluding the need for an Act 250 permit based on changed circumstances due to stormwater treatment facilities or any other reason.

6

to the prevailing party, they are clearly erroneous," meaning "that there is no credible evidence to support them." Id. (quotations omitted). "[W]e uphold [the Environmental Division's] legal conclusions if they are reasonably supported by the findings." In re N. E. Materials Grp., LLC/Rock of Ages Corp. Act 250 Permit, 2019 VT 55, ¶ 6, 210 Vt. 525, 217 A.3d 541 (quotation omitted). It is the exclusive role of the Environmental Division to "determine[] the credibility of witnesses and weigh[] the persuasive effect of evidence." In re Entergy, 2009 VT 124, ¶ 15 (quotation omitted).

¶ 15. The Environmental Division's conclusion that Snowstone and landowners are not one "person" for purposes of Act 250 jurisdiction is supported by its findings and the evidence. It follows that the project falls below the one-acre threshold set forth in 10 V.S.A. § 6001(3)(A)(ii) regardless of how the phrase "construction of improvements . . . on more than one acre of land" is construed. Like the Environmental Division, we find it unnecessary to decide if the doctrine of involved land applies here.

¶ 16. For municipalities like Cavendish without permanent zoning and subdivision bylaws, "development" is defined as "[t]he construction of improvements for commercial or industrial purposes on more than one acre of land." Id. We assume arguendo that "land" means "tracts of land," as in municipalities with permanent zoning and subdivision bylaws. See id. § 6001(3)(A)(i) (defining "development" as "[t]he construction of improvements on a tract or tracts of land, owned or controlled by a person, involving more than 10 acres of land within a radius of five miles of any point on any involved land, for commercial or industrial purposes in a municipality that has adopted permanent zoning and subdivision bylaws").

¶ 17. A "tract of land" is defined as "one or more physically contiguous parcels of land owned or controlled by the same person or persons." Act 250 Rules, Rule 2(C)(12), Code of Vt. Rules 12 004 060 [hereinafter Act 250 Rules], https://nrb.vermont.gov/sites/nrb/files/documents/ 2015%20Adopted%20Rules.pdf [https://perma.cc/3HDX-6V3R]. The term "person" for purposes of a "development" means "an individual, partnership, corporation, association, unincorporated

7

organization, trust or other legal or commercial entity, including a joint venture or affiliated ownership; a municipality or state agency; and, individuals and entities affiliated with each other for profit, consideration, or any other beneficial interest derived from the 'development' of land." Act 250 Rule 2(C)(1)(a).

¶ 18. We considered the meaning of these concepts in Vitale, specifically, whether one person "controlled" a tract of land larger than one acre for purposes of Act 250 jurisdiction. 151 Vt. at 582, 563 A.2d at 615. In that case, a buyer agreed to purchase 1.57 acres of property that he intended to use for a commercial purpose. The parties agreed on a price and set a closing date. On the advice of counsel, the buyer asked the seller to delay the closing and subdivide the property into two separate lots, each less than one acre, to avoid Act 250 jurisdiction. The buyer assisted the sellers in obtaining the permits necessary to effectuate the subdivision. The buyer then paid the full purchase price but only accepted the conveyance of a 0.99-acre parcel on which he placed his commercial improvements. Once these improvements were complete, the seller conveyed the remining 0.58-acre parcel to the buyer for no additional consideration. Id. at 581, 563 A.2d at 614. Both transactions occurred within an approximately three-week period.

¶ 19. The Environmental Board concluded that the buyer commenced construction of a "development" because he "exercised 'control' over the full 1.57 acres at the time the project was built." Id. at 582, 563 A.2d at 614. In support of its conclusion, the Board cited "the impossibility of direct access to the property, the 'extremely' short length of time between the sales of the two lots, and the lack of marketability of the property" to any other buyer. Id. at 584, 563 A.2d at 616. It also found that the buyer "suggested the subdivision, carried out the survey, and obtained the necessary permits," the seller retained no right-of-way over the 0.99-acre lot sold to buyer, and the buyer paid no additional consideration for the remaining lot at the time he acquired legal title to it. Id. The Board rejected the argument "that these were separate arm's-length transactions" and instead concluded that "the acquisition of the two parcels . . . was all part of the same transaction

8

and that [the buyer] 'controlled' both lots for purposes of Act 250 jurisdiction." Id. at 584-85, 563 A.2d at 616.

¶ 20. We affirmed this decision on appeal, acknowledging that the issue of "control" was "a question of fact" to be resolved by the factfinder. Id. at 583, 563 A.2d at 615. The buyer did not contest the Board's findings on appeal, and we concluded that the findings supported the Board's conclusion that the buyer " 'controlled' the full 1.57 acres at the time of construction of the improvements." Id. at 585, 563 A.2d at 616.

¶ 21. We are faced with much different circumstances here. In this case, the Environmental Division made numerous findings in support of its conclusion that Snowstone and landowners are not one "person" for purposes of Act 250 jurisdiction, none of which neighbors challenge as clearly erroneous. The findings support the court's conclusion. As set forth above, the parties had no prior dealings with one another and landowners had no ownership interest in Snowstone. While both parties sought to limit the area to be conveyed, they did not do so to improperly "evade" Act 250 jurisdiction; the size of the parcel reflected the size of the quarry and keeping the parcel small was consistent with each party's respective self-interests. Their contract did not call for or allow landowners to retain any ownership or controlling interest over the parcel to be sold to Snowstone or with respect to the access easement and the same was true of Snowstone. The facts of Vitale are easily distinguishable from those presented here.

¶ 22. Neighbors point to evidence they deem compelling and essentially ask us to reweigh the evidence and reach a conclusion contrary to that of the Environmental Division. That is not our role. The court did not find, as neighbors urge, that landowners and Snowstone were one "person" by virtue of being "affiliated with each other for profit, consideration, or any other beneficial interest derived from the 'development' of land.' " Act 250 Rule 2(C)(1)(a). It did not find the proposed sale to be "fishy" or structured to improperly evade Act 250. Instead, as detailed above, it found this to be an arm's-length transaction where neither party retained "control" over the land of the other such that they should be considered one "person" for Act 250 purposes. The

9

court's decision is supported by the evidence and we do not reweigh the evidence on appeal. In re Entergy, 2009 VT 124, ¶ 15. While neighbors disagree with this conclusion, they fail to demonstrate error. The court's findings support its conclusion that the proposed project falls below the Act 250 jurisdictional threshold and accordingly does not require an Act 250 permit.

## B. Request for Additional Hearing

¶ 23. We next consider whether the Environmental Division erred in concluding that neighbors did not request an additional hearing in the JO appeal to present evidence regarding the project footprint in light of stormwater permit conditions. There was no error.

¶ 24. Under Vermont Rule for Environmental Court Proceedings 2(b), "where the same violation or project involves multiple proceedings that have resulted or may result in separate hearings or appeals in the Environmental Court, or where different violations or projects involve significant common issues of law or fact," the Environmental Division may coordinate the proceedings and "make other orders that will promote expeditious and fair proceedings and avoid unnecessary costs or delay." The court enjoys discretionary authority to control its docket to preserve judicial resources and ensure efficient disposition of cases. See, e.g., In re Woodstock Cmty. Tr. & Hous. Vt. PRD, 2012 VT 87, ¶ 36, 192 Vt. 474, 60 A.3d 686 (observing that "every court has the power to control the disposition of the causes on its docket") (quotation omitted); State v. Jones, 157 Vt. 553, 559, 601 A.2d 502, 505 (1991) (leaving control of docket management with courts).

¶ 25. At the merits hearing, neighbors agreed to bifurcate the matter for the court to resolve the "involved land" and "owned or controlled by a person" issues based on the evidence presented at the merits hearing and then resolve the stormwater and project-footprint issues separately, with neighbors reserving the opportunity to "request that the record be reopened." In a later order memorializing the agreement, the court directed Snowstone to obtain the necessary stormwater permits and inform the court and neighbors of the permit determination within ten days of that determination. That order also gave the parties thirty days from the permit determination

to request a further hearing in the JO appeal and warned that if no party requested such a hearing, the court would issue a final judgment.

¶ 26. Neighbors do not dispute that they did not file any request with the court within thirty days of the permit decision. Instead, they argue that the motion to consolidate the JO and MSGP appeals qualifies as a request for a further hearing in the JO appeal. But even if we were to consider the motion to consolidate as a motion to reopen the JO appeal, that motion was filed well beyond the thirty-day deadline the court imposed—forty-four days after the permit decision, to be exact. Nor can we agree with neighbors that Snowstone's failure to inform them and the court of the permit decision within ten days excuses their own failure to abide by the court's order. Neighbors, who participated in the stormwater permitting proceedings, had notice that the permit was issued at least by July 5, 2019, when they appealed the MSGP permit decision. Still, they did not meet the court's July 12 deadline. We cannot fault the court for enforcing its own rules in the face of this default.

## C. Landowners' Intervention

¶ 27. We affirm the Environmental Division's judgment concluding that the proposed project does not require an Act 250 permit, and the court's action in entering that judgment following neighbors' failure to abide by its order. This disposition renders moot neighbors' argument that the court erred in allowing landowners to intervene, as any pronouncement on the subject will have no effect. See Houston v. Town of Waitsfield, 2007 VT 135, ¶ 5, 183 Vt. 543, 944 A.2d 260 (mem.) (noting that issues become moot if Court can "no longer grant effective relief" (quotation omitted)).

Affirmed.

FOR THE COURT:

_____
Associate Justice

11