VERMONT SUPERIOR COURT

Environmental Division
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org

Docket No. 23-ENV-00023



| | |
|---|---|
| Shumway Conditional Use Appeal | MERITS DECISON |

This is an appeal of a Town of Swanton Development Review Board (DRB) decision granting conditional use approval to Brittney Shumway (Applicant) to operate a roadside stand to sell strawberries and soft serve ice cream (creemees) at the property located at 200 Middle Road in Swanton, Vermont. Neighboring landowners Michael and Tani Cornell-Barrett (Appellants) appealed the DRB's decision to this Court.

In this matter, Applicant is represented by Attorney Matthew Daly. Appellants are represented by Attorney Elizabeth Conolly.

**Procedural History**

The Court originally scheduled a one-day merits hearing in this matter on October 30, 2024. The Court also conducted a site visit with the parties the day prior on October 29, 2024.[1] On the morning of trial, Applicant asked to continue the hearing to pursue an agricultural exemption for the project pursuant to 24 V.S.A. § 4413(d)(1)(A). With no objection from Appellants, the Court placed this matter on inactive status.

Shortly thereafter, Applicant received determinations from the Vermont Agency of Agriculture and the Swanton Deputy Zoning Administrator concluding that the roadside stand was exempt from zoning regulation and does not require a permit. However, the Zoning Administrator also determined that the creemee component of the application was still regulated by the Town's February 27, 2023 Conditional Use Permit. The Zoning Administrator's exemption decision was

---

[1] As previously explained to the parties, the site visit and observations are not evidence, but rather are used to put the evidence presented during trial into context.

appealed to the DRB by the Appellants in this case, which denied the appeal. No further appeal to this Court was taken.

After reviewing those decisions, the Court strongly encouraged the parties to resolve this dispute voluntarily. When it became clear that no resolution was forthcoming, the Court set this matter for trial to decide the sole issue of whether Applicant could sell creemees out of the roadside stand. As this second trial date neared, Applicant notified the Court that she was simultaneously seeking approval for the roadside stand as an accessory on farm business (AOFB). Applicant moved to continue the scheduled trial and stay this matter. Appellants initially opposed the motion to stay/continue, but then later changed their position in support of the motion. The Court denied the motion, reasoning that any potential AOFB determination would be a separate appealable decision that is independent of Applicant's application for conditional use review. Furthermore, we noted that this docket has been pending for over two years, and that resolution of this appeal was long overdue.[2]

The Court and parties held a one-day trial on June 6, 2025 via the Webex platform.

### Statement of Questions

Appellants filed their original Statement of Questions on April 7, 2023. At a September 16, 2024 status conference, the Court directed Appellants to amend their Statement of Questions to reflect this Court's de novo proceedings. Appellants' amended Statement of Questions, filed on September 23, 2024, contained 20 Questions for review. At an October 21, 2024 pre-trial conference, the Court and parties discussed consolidating Questions 7 through 13 into a single Question. Accordingly, the following Questions are presented for a final determination:

(1) Section 4.18 of the Swanton Zoning Bylaws… defines a Roadside Stand as "A facility intended only for the sale of local agricultural products." Does the approved Project meet this definition?

(2) Section 4.18(1) of the Zoning Bylaws states that: "Stands shall be located not less than 20 feet from all road rights-of-way." Does the approved project conform to this conditional use standard?

(3) Section 4.18(2) of the Zoning Bylaws states that: "Stands shall be used exclusively for the sale of agricultural products raised locally. For the purposes of this section, locally produced agricultural products shall include those products raised in Franklin and Grand Isle Counties." Does the sale of "soft-serve" and/or ice cream conform with this conditional use standard?

---

[2] This case was filed on March 17, 2023. Between that date and September 2024, there were multiple substitutions of counsel, as well as a substitution of the presiding judge, which caused significant scheduling delays. After September 2024, any further delays were principally caused by Applicant's desire to pursue various permit exemptions.

(4) Section 4.18(3) of the Zoning Bylaws states that: "Products sold in roadside stands shall be limited to unprocessed or minimally-processed and value-added agricultural commodities (e.g., raw vegetables, locally produced cheese, maple syrup, apple cider, jellies and jams, baked goods, cured meats)." Does the sale of "soft-serve" and/or ice cream conform with this conditional use standard?

(5) Section 4.18(4) of the Zoning Bylaws states that: "A minimum of three off-street parking spaces shall be required." Does the approved project conform with this conditional use standard?

(6) Should the project be considered a "restaurant" as defined under Section 10.2 of the Zoning Bylaws, which would not be a permitted or conditional use for the subject property located in the Agricultural/Residential (R1) District per Section 2.4.4, "Zoning District Standards" of the Zoning Bylaws?

(7) The Zoning Bylaws set forth the "Parking, Loading & Service Area Requirements" which apply under subsection (B) "Whenever any new use is established, or when an existing use is expanded or changed." Does the approved project conform with the requirements set out in Section 3.10 of the Zoning Bylaws, including subsections (B)(2), (3), (4), (6), (7), and (9).[3]

***

(14) Section 2.3 of the Zoning Bylaws, Application of District Standards, subsection (D) states that: "All uses except for single- and two-family dwellings and associated structures and uses are also subject to site plan review in accordance with Section 5.3." Did Appellees' application materials meet the site plan review standards and criteria required by Section 5.3 and Table 5.1 of the Zoning Bylaws?

(15) Does the Project meet the site plan review "General Standards" 1-7 listed in §5.3(D) of the Zoning Bylaws?

(16) Was any site plan waiver requested by the Appellees in accordance with the requirements of the Zoning Bylaws, Sections 5.3(A) and 5.3(B)?

(17) Was any site plan waiver granted by the Development Review Board in accordance with the requirements of the Zoning Bylaws, Sections 5.3(A) and 5.3(B).

(18) Was the site plan review procedure properly conducted under §5.3(C) of the Zoning Bylaws?

(19) Was it necessary for the Appellees to obtain site plan approval from the Agency of Transportation, in accordance with 24 V.S.A.

---

[3] This Question reflects consolidated Questions 7 through 13.

§ 4416(b), since the project involved access to a State Highway (Route 38)?  Did Appellees obtain site plan approval from the Agency of Transportation?

(20)    Was a Conditional Use Review properly conducted under Section 5.4 of the Zoning Bylaws?

Appellants' Amended Statement of Questions (filed September 23, 2024).

**Findings of Fact**

1.  Brittany Shumway (née Sweeney) (Applicant) owns the property located at 200 Middle Road, Swanton, Vermont (the Property), together with her husband, Blade Shumway. Stip. Ex. 2.

2.  The Property is located in Franklin County, in a largely rural area, on a lightly to moderately populated road, surrounded by agricultural lands.

3.  The Property is located in the Agricultural/Residential (R1) District, as designated by the Town of Swanton Zoning Bylaws (the Bylaws).  The Bylaws list "Roadside Stand" as a conditional use in the R1 District.  Stip. Ex. 14.

4.  The Property is five acres in size, and contains Applicant's single-family home, a barn, an accessory garage, a contractor's yard, a strawberry field, and a 20' x 12' shed.

5.  In February 2023, Applicant applied for a conditional use permit to use the shed as a roadside stand.

6.  The application describes the project as "4.18 Roadside Stand Agribusiness (Strawberry-U-Pick), shed placement 12x20 (or smaller), berries, produce, everything w/in the zoning provisions of Roadside Stand, ice cream/soft-serve."  Stip. Ex. 1.

7.  The application seeks approval to operate from Mid-June through Mid-July, seven days per week, between the hours of 8:00 AM and 7:30 PM.

8.  The application included a basic hand drawn sketch of the Property, which depicts setback distances for the stand and a total of eight parking spaces.

9.  Applicant intends to source/has sourced creemee mix from Kingdom Creamery in Hardwick Vermont.

10. The process of making creemees generally involves buying bags of creemee mix, dumping it into a machine to chill and stir the mix, and pulling a lever.

11. Applicant intends to allow customers to consume the creemees on site.

12. The Swanton Development Review Board (DRB) held a public hearing on the application on February 23, 2023, and ultimately approved the project with two conditions on February 28, 2023.

13. The first condition amended operation times from 7:00 AM to 8:00 PM, seven days a week, operating seasonally from January to December.

14. The second condition amended the proposed eight parking spaces to twenty spaces, with no customer parking on the southeast corner of the field.

15. Neighboring landowners Michael and Tani Cornell-Barrett (Appellants) timely appealed the DRB's decision to this Court on March 17, 2023.

16. While this appeal was pending, Applicant became aware that her project may be exempt from zoning pursuant to 24 V.S.A. § 4413(d)(1)(A).

17. Applicant petitioned the Swanton Zoning Administrator and Vermont Agency of Agriculture Food and Markets to declare that the roadside stand is exempt from zoning regulation.

18. In a decision dated November 8, 2024, the Swanton Deputy Zoning Administrator issued a letter concluding that Applicant's strawberry operations and roadside stand were exempt from land use regulation pursuant to 24 V.S.A. § 4413(d)(1)(A). The letter specified that the soft serve ice cream component of Applicant's application remains subject to the previously issued conditional use permit.

19. Appellants appealed the Zoning Administrator's decision to the DRB, which denied the appeal. Appellants did not appeal the DRB's decision.

20. The roadside stand has been operating since 2023, and Applicant has not received any complaints regarding that use, except from Appellants.

21. Appellants are principally concerned with noise emanating from the existing contractor's yard on the Property. Appellants do not object to the roadside stand but do object to people eating creemees on the Property, also due to concerns about noise.

22. Since the roadside stand has been operating, Appellants have experienced additional noise coming from the Property, including from cars breaking and accelerating. Appellants would like any additional noise to be mitigated. Appellants have also observed cars turning around in their driveway to access the roadside stand.

## Discussion

The only issue remaining in this appeal is whether the creemee component of Applicant's conditional use application complies with the Swanton Zoning Bylaws (the Bylaws). The Zoning Administrator's November 8, 2024 letter concluded that the roadside stand and U-Pick strawberry operations are exempt from zoning regulation under 24 V.S.A. § 4413(d)(1)(A). Only the creemee sales were not considered exempt. The Zoning Administrator's letter was appealed to the DRB, which

denied the appeal. Because no further appeal was taken, the November 8, 2024 letter is final and binding, regardless of whether it was issued in error. 24 V.S.A. § 4472(d); see also Levy v. Town of St. Albans Zoning Bd. of Adjustment, 152 Vt 139, 142–143 (1989) (explaining that "if a direct appeal is not taken, the decision of the zoning [administrator] is final and not contestable."). Accordingly, we review whether Applicant's creemee sales comply with the applicable criteria in the Bylaws.

Because the creemee sales are a component of Applicant's roadside stand, we first turn to the roadside stand provisions in Bylaws § 4.18. This section provides that roadside stands are subject to conditional use review under Section 5.4 of the Bylaws as well as the following standards:

(1) Stands shall be located not less than 20 feet from all road rights-of-way.
(2) Stands shall be used exclusively for the sale of agricultural products raised locally. For the purposes of this section, locally produced agricultural products shall include those products raised in Franklin and Grand Isle Counties.
(3) Products sold in roadside stands shall be limited to unprocessed or minimally-processed and value-added agricultural commodities (e.g., raw vegetables, locally produced cheese, maple syrup, apple cider, jellies and jams, baked goods, cured meats).
(4) A minimum of three off-street parking spaces shall be required.

Swanton Zoning Bylaws § 4.18(A)(1)–(4).

Here, the roadside stand is more than 500 feet from the roadway and provides more than the minimum required parking spaces. Stip. Ex. 1. Appellants focus their attention on Bylaws § 4.18(A)(2), which requires agricultural products to be raised locally. This provision specifies that local products are those raised in Franklin and Grand Isle Counties. While we conclude that creemees are a minimally processed and value-added agricultural product, Applicant indicated that she has been sourcing (and intends to continue to source) her creemee mix from Kingdom Creamery in Hardwick, which is located in Caledonia County. Thus, Applicant's intended source of creemee mix does not comply with this specific provision. In order to sell creemees, Applicant will need to procure creemee mix from Franklin or Grand Isle Counties or create the mix herself using dairy from those Counties. Subject to this condition, we hereby answer Appellants' Questions 1 through 5 in favor of Applicant.

We now turn to the general conditional use standards found in Bylaws § 5.4. Those general standards require a finding that a proposed development will not have an undue adverse effect on: (1) the capacity of existing or planned community facilities or services; (2) character of the area affected;

(3) traffic on roads and highways; (4) bylaws now in effect; and (5) the utilization of renewable energy resources. Bylaws § 5.4(D)(1)–(5).

Again, we emphasize that our review is limited only to creemee sales. The remainder of the roadside stand and strawberry farm operation are exempt from our review. With this limitation in mind, we conclude that creemee sales will not have an undue adverse impact on community facilities, the character of the area, traffic, other bylaws, and renewable energy resources. The immediate neighborhood is surrounded by other agricultural operations. The roadside stand has been operating since 2023, and Applicant has not received any complaints regarding that use. The creemee sales may result in a marginal increase in traffic to the neighborhood, but Appellants do not oppose the project on traffic related grounds. Rather, their objections are based on noise, primarily related to the existing contractor's yard on the Property.[4] Thus, the creemee sales comply with the general conditional use criteria in Bylaws § 5.4. We answer Appellants' Question 20 in favor of Applicant.

Appellants point to Bylaws § 5.4(A), which requires an applicant for conditional use approval to submit a site development plan and associated materials. The site development plan must be prepared by a licensed engineer, surveyor, or land planner, and must include a long list of technical items. Appellants ask this Court to deny Applicant's permit application for failure to include such a detailed site development plan. We decline to do so.

Bylaws § 5.4(B) authorizes the DRB, and by extension this Court, to waive one or more of the listed application items if it is determined that the items are unnecessary for comprehensive review of an application. At trial, the Court asked Applicant whether she sought a waiver of the site development plan requirements, to which Applicant responded in the affirmative. We conclude that such a detailed plan is entirely unnecessary for our review over Applicant's proposed creemee sales given the limited scope of the proposal. Thus, a waiver of the site development plan requirement is appropriate and granted in this case.

Appellants also argue that the creemee sales are more akin to a restaurant, which is not a permitted use in the R-1 Zoning District. Thus, we look to the definitions in the Bylaws to categorize this use. The Bylaws define a restaurant as "[p]remises where food and drink are prepared, served and consumed primarily within the principal building. This definition includes cafes, taverns and bars, but

---

[4] Section 3.11 of the Zoning Bylaws contains performance standards that apply to all uses, except agricultural and temporary forestry operations, and that, among other things, prohibit "noise which is excessive at the property line and represents a significant increase in noise levels in the vicinity of the development so as to be incompatible with the reasonable use of the surrounding area." If noise related the contractor's yard, or any other use of the Property, is an issue for Appellants, that issue should be raised with the Zoning Administrator in the first instance for a determination regarding whether the use is in conformance with the performance standards.

excludes night clubs." Bylaws Art. 10 ("Restaurant"). By contrast, the Bylaws define Roadside Stand as "[a] facility intended only for the sale of local agricultural products." Id. ("Roadside Stand"). We conclude that the creemee sales and any onsite consumption — which will not occur primarily within the principal building (i.e., the roadside stand) — do not rise to the level of a Restaurant, as defined by the Bylaws.

Again, our review is limited in scope to the preparation, sale, and consumption of creemees. The remainder of Applicant's operations are otherwise exempt from regulation by virtue of the Zoning Administrator's unappealed November 8, 2024 letter. Applicant's roadside stand will be used exclusively to sell local agricultural products. It is not akin to a café, tavern, or bar. This is precisely the type of use which fits within the rural/residential neighborhood, and which supports Applicant's agricultural operations. Thus, we conclude that the application is properly characterized as a roadside stand, which is allowed within the R1 District. We answer Appellants' Question 6 in the negative.

Appellants Statement of Questions includes several Questions relating to parking requirements. We note that Appellants' post-trial brief does not include any mention of parking, and at trial, the only related concern involved cars turning around in Appellants' driveway. At a minimum, the Bylaws require a roadside stand to have three parking spaces. Applicant originally proposed eight spaces, which the DRB later increased to twenty. Applicant is willing to accept the DRB's modifications and conditions related to parking. Additionally, aerial photographs of the Property depict a large concrete/gravel parking area adjacent to the roadside stand which is sufficiently large to accommodate parking and safe traffic circulation for vehicles and pedestrians. Ex. 17. Thus, we conclude that the proposed project complies with the parking requirements in the Bylaws. We answer Appellants' Question 7, as amended and combined, in favor of Applicant.

Lastly, Appellants argue that because the Property is already improved with a Contractor's Yard, the Property may not contain a second conditional use in the R-1 Zoning District pursuant to Bylaws § 4.13. This issue of mixed uses, however, was not preserved for our review and is therefore outside our jurisdiction to consider.

This Court's jurisdiction is limited by the Statement of Questions. V.R.E.C.P. 5(f) ("The appellant may not raise any question on the appeal not presented in the statement as filed."); In re Garen, 174 Vt. 151, 156 (2002). This Court, however, may consider issues that are intrinsic to the statement of questions, even if they are not literally stated. In re LaBerge NOV, 2016 VT 99, ¶ 15, 203 Vt. 98.

8

Here, there is no express or intrinsic reference in Appellants' Statement of Questions which raises the issue of mixed uses on the Property. There is no citation to Bylaws § 4.13 which Appellants now rely upon. Nor can we infer from the Questions that Appellants intended to raise an issue regarding mixed uses. Accordingly, this argument is outside our jurisdiction and we will not consider it.

Finally, Appellants argue that the Court should deny the conditional use permit for failure to obtain site plan approval. As previously explained at trial and in prior proceedings, this is an appeal of Applicant's application for conditional use review. Site plan review involves separate requirements for approval from the DRB. To the extent that Applicant's proposed project requires site plan approval, that determination needs to be made by the Swanton Zoning Administrator in the first instance.[5] It is not within the scope of this proceeding, regardless of our de novo review, to determine whether other permits/approvals are necessary. See In re Snowstone LLC Stormwater Discharge Authorization, 2021 VT 36, ¶ 29 (holding only issue on appeal regarding permit application is whether applicant properly received permit "and the necessity to seek any other permit was not properly before the court in an appeal of that authorization"). We are limited to reviewing whether the application on appeal complies with the Bylaws. Thus, we decline to consider Appellants' arguments pertaining to site plan review, as contained in Appellants' Questions 14 through 19.

## Conclusion

For the foregoing reasons, we conclude that Applicant's proposal to sell creemees out of a roadside stand complies with all relevant conditional use and parking standards in the Swanton Zoning Bylaws. In so concluding, we answer Appellants' Questions 1 through 7 and Question 20 in favor of Applicant. We **GRANT** Applicant's request for conditional use approval, subject to the following conditions:

- Operational times shall be from 7:00 AM to 8:00 PM, seven days a week, operating seasonally from January to December.
- There shall be twenty parking spaces on the Property, clearly delineated, with no customer parking allowed on the southeast corner of the Property or along the roadway adjacent to Appellants' frontage.

---

[5] Unlike other provisions of Article 4 (Specific Use Standards), § 4.18 does not expressly require site plan approval for a roadside stand. It is for the Zoning Administrator, however, to make an initial determination regarding whether site plan review is nonetheless required.

- Applicant's creemee mix shall be sourced from dairy produced in Grand Isle or Franklin County.

This concludes the matter before the Court. A Judgment Order accompanies this Decision.

Electronically signed on June 23, 2025, pursuant to V.R.E.F. 9(d).

Joseph S. McLean
Superior Court Judge
Environmental Division